[No. B206686. Second Dist., Div. Seven. Apr. 7, 2009.]

JAMES A. MARTIN et al., Plaintiffs and Appellants, v.
BRIDGEPORT COMMUNITY ASSOCIATION, INC., Defendant and
Respondent.

## COUNSEL

Law Offices of David L. Hoffman and David L. Hoffman for Plaintiffs and Appellants.

Kulik, Gottesman, Mouton & Siegel, Leonard Siegel, Francesca Dioguardi and Thomas Ware for Defendant and Respondent.

## OPINION

JACKSON, J.—

### INTRODUCTION

Plaintiffs James A. Martin and his wife, RaeAnn, appeal from a judgment against them, including the award of attorney's fees and costs, entered after the trial court sustained a demurrer in favor of defendant Bridgeport Community Association. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Richard and Rachel Peterson (the Petersons) purchased a home constructed by Richmond American Homes (Richmond) in a planned development community named Bridgeport in Santa Clarita at 23944 Windward Lane, lot 33 (the Property). The Bridgeport Community Association, Inc. (BCA), was the homeowners association responsible for managing the common areas and enforcing the master declaration of covenants, conditions, and restrictions for Bridgeport (the CC&R's) and rules and regulations (the R&R's) for the community.

Pursuant to an arrangement with the Petersons, James Martin and his wife, RaeAnn (the Martins), agreed that the Martins would live at the Property and

---

[1] In reviewing the propriety of sustaining a demurrer, we " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Accordingly, the statement of facts is based on the factual allegations in the first amended complaint (FAC), which was the subject of the demurrer at issue here.

pay all the costs involved with the Property, including the mortgage payments. RaeAnn Martin is the Petersons' daughter. They also agreed that the Martins would deal directly with BCA on any issues regarding the Property. The Petersons executed a power of attorney to that effect, which was accepted by BCA. The Petersons agreed to assign all their rights, title, and interest in their causes of action stated in the FAC to the Martins.

During construction of the home on the Property, the Petersons and the Martins observed that the size of lot 33 where the construction was occurring was smaller than represented in the purchase transaction. Richmond agreed to move the northern property line 10 feet to include approximately 5,593 square feet within the lot 33 lot lines (Adjustment Area). This required two separate lot line adjustments (Lot Line Adjustment No. 1 and Lot Line Adjustment No. 2). Before either adjustment could be completed, Richmond transferred the Adjustment Area to BCA as part of the common area.

As the result of negotiations with BCA by the Martins on behalf of the Petersons, BCA agreed to deed the Adjustment Area to the Petersons under certain terms and conditions (BCA Lot Line Agreement), as shown by a May 8, 2004 letter from Nancy O'Neil on behalf of the BCA board of directors and an August 10, 2004 letter from the attorney for BCA.[2] Both letters were addressed to the Martins. The Martins accepted the terms of the agreement proposed by BCA on behalf of themselves and the Petersons. Both letters represented that the BCA board had agreed to completing the Lot Line Adjustment No. 2 and the transfer of land, subject to the conditions that the homeowners would pay BCA's attorney's fees to prepare and execute the necessary documents and the homeowners would pay for the relocation of the common area sprinklers from the Adjustment Area.

After receiving notice of BCA's agreement, the Martins invested money for fencing, landscaping and the importation of dirt on the Adjustment Area. The Martins also represented that the Petersons were not able to landscape and hardscape their front yard because they did not yet have ownership of the Adjustment Area and thus lost use of the yard for more than four years.

After lengthy delays, the City of Santa Clarita (City) approved Lot Line Adjustment No. 1. When BCA did not thereafter cooperate in order to begin

---

[2] The letter from the BCA board's representative stated: "The Board considered your request for the additional parcel of land that includes the triangle-shaped piece of land on the northwest corner of your lot to be deeded over to you. The Board granted your request with the following conditions: [¶] 1. The homeowners will be financially responsible for the legal fees of [BCA's] attorney to prepare and execute the necessary documents. [¶] 2. The homeowners will be financially responsible for the cost of moving the common area sprinklers to the common area by [BCA's] landscape maintenance company."

the required City-approval process for Lot Line Adjustment No. 2, the Martins sought specific performance of the BCA Lot Line Agreement by filing the instant lawsuit on October 20, 2006. The original complaint named the Petersons and the Martins as plaintiffs and BCA as defendant. BCA filed a demurrer to the complaint, in part on the ground that the Martins lacked standing.

Then the Martins filed the FAC, the operative complaint in this action. The FAC named only the Martins as plaintiffs. The first cause of action was for damages for breach of, and the second cause of action was for specific performance of, the BCA Lot Line Agreement. As a part of the allegations, the Martins requested that the court order BCA "to transfer title and cooperate in the approval and transfer of title to the property regarding Lot Line Adjustment No. 2 to Plaintiffs [the Martins]."

The third cause of action was for breach of the R&R's of, and the fourth cause of action was for breach of the CC&R's of, the Bridgeport Community. The fifth cause of action was for violation of Civil Code section 1363 et seq.[3]

The sixth cause of action was for intentional infliction of emotional distress. In part, the Martins alleged BCA took certain actions "in order to punish, and retaliate against, the Plaintiffs [the Martins] for enforcing their rights with respect to the Property."

The seventh cause of action was for negligence arising from the duty of BCA to the Martins, "as residents and members of the BCA," to use reasonable care in maintaining the common areas. The eighth cause of action was for negligence per se for violation of sections 1363 and 1364.

At the hearing on July 16, 2007, the trial court ruled that the demurrer to the FAC was sustained with leave to amend as to the first through the fifth, and the seventh and eighth causes of action, on the ground that the Martins lacked standing. With regard to the scope of the leave to amend, the trial court stated: "I am going to allow [plaintiffs' counsel] leave to amend to bring in the Petersons, and I will give [counsel] one last shot at seeing if there's any other claims the Martins have that can be pled." As to the sixth cause of action, the trial court sustained the demurrer without leave to amend, on the ground that the facts did not support a finding of sufficiently outrageous conduct as is necessary for recovery based upon intentional infliction of emotional distress.[4]

---

[3] Civil Code section 1363 et seq. is a part of the Davis-Stirling Common Interest Development Act (Davis-Stirling Act) codified in the Civil Code beginning at section 1350. Further statutory references are to the Civil Code, unless otherwise identified.

[4] The Martins do not challenge the trial court's ruling as to the sixth cause of action.

The second amended complaint (SAC) was filed on August 6, 2007. The Petersons were the only named plaintiffs. They alleged only four causes of action: first cause for breach of the R&R's, second cause for breach of the CC&R's, third cause for violation of sections 1363 and 1364, and fourth cause for negligence per se based on the violation of the same statutes.

BCA filed a demurrer to the SAC. After hearing on December 10, 2007, the trial court sustained the demurrer with leave to amend as to the first, second and third causes of action on the ground of failure to allege sufficient facts to support the causes of action. The court sustained the demurrer to the SAC without leave to amend as to the fourth cause of action.

The Petersons filed the third amended complaint on January 4, 2008. Only the Petersons were named as plaintiffs.

Also on January 4, 2008, BCA filed a request that the court enter judgment against the Martins in favor of BCA. The request represented that on July 16, 2007, the trial court granted BCA's demurrer to the FAC "without leave to amend," except leave to amend to substitute the Petersons, as the real parties in interest, for the Martins as plaintiffs, and the Petersons filed the SAC.

BCA also filed a motion for an award of attorney's fees pursuant to sections 1354, subdivision (c), and 1717, subdivision (a). The trial court granted BCA's motion for award of attorney's fees in the amount of $29,371.39 for defense against the Martins. The trial court entered judgment in favor of BCA against the Martins and included the award of attorney's fees and costs to BCA.[5]

## DISCUSSION

The Martins contend that the trial court erred in sustaining BCA's demurrer on the ground that they lacked standing to assert the first through fifth, seventh and eighth causes of action. They claim they had standing as to all the causes of action, in that the Petersons assigned "all of their rights, title, and interest in their causes of action stated in the First Amended Complaint . . . to the Martins." As to individual causes of action, the Martins also

---

[5] We deny the Martins' request for judicial notice of "the fact that [BCA] filed an action on November 27, 2007, after the demurrer on the FAC was decided by the Trial Court finding that the Martins lacked standing. [Citation.] [¶] The new action is against the Martins as well as the Petersons to enforce the Governing Documents (Los Angeles [County] Superior Court Case No. PC 041756, Bridgeport Community Association, Inc. v. James A. Martin et al.)." A copy of the then current civil case summary for the lawsuit was attached as an exhibit to the request. Our review is limited to the trial court's judgment against the Martins in the instant action. We will not consider evidence offered on appeal which was not before the trial court in connection with the judgment. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

present other grounds upon which they contend they have standing. The Martins further claim that the trial court erred in including in the judgment an award of attorney's fees and costs pursuant to section 1354. We disagree and affirm the judgment.

## I. *Standard of Review*

When a demurrer is sustained by the trial court, we review the complaint de novo to determine whether, as a matter of law, the complaint states facts sufficient to constitute a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Reading the complaint as a whole and giving it a reasonable interpretation, we treat all material facts properly pleaded as true. (*Ibid.*) The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880 [6 Cal.Rptr.2d 151].) We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings. (*Id.* at p. 880, fn. 10.)

A trial court has discretion to sustain a demurrer with or without leave to amend. (*Zelig v. County of Los Angeles, supra*, 27 Cal.4th at p. 1126.) If we determine that the plaintiff has met its burden to demonstrate that a reasonable possibility exists that the defect can be cured by amendment of the pleading, then the trial court has abused its discretion in denying leave to amend and we reverse the denial. (*Ibid.*) Otherwise, we affirm the judgment on the basis that the trial court has not abused its discretion. (*Ibid.*)

**(1)** Standing is the threshold element required to state a cause of action and, thus, lack of standing may be raised by demurrer. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 813 [66 Cal.Rptr.3d 543]; *Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000 [24 Cal.Rptr.3d 474].) To have standing to sue, a person, or those whom he properly represents, must " 'have a real interest in the ultimate adjudication because [he] has [either] suffered [or] is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' [Citation.]" (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 707 [93 Cal.Rptr.2d 580].) Code of Civil Procedure section 367 establishes the rule that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." ██ A real party in interest is one who has "an actual

and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action." (*Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 225 [107 Cal.Rptr. 123].) Upon review of action on a demurrer, we review the determination of standing de novo.

## II. Standing

The Martins' causes of action relate to BCA's actions with regard to, or duties with respect to, the Property, that is, lot 33 owned by the Petersons, as part of a planned development subject to the Davis-Stirling Act. The causes of action other than the first and second seek either the enforcement of governing documents of the development, including its CC&R's and R&R's, or redress for violations of the Davis-Stirling Act. The Martins did not claim to have, and the record does not show that the Martins ever had, any ownership interest in the Property. As we explain below, ownership in the Property is a prerequisite to standing to assert each of the causes of action as each seeks redress for violations of rights of the owners of the Property, for which the causes of action are not assignable to the Martins.

 The Martins contend they have standing on the basis that the Petersons assigned to them all the Petersons' interests in the causes of action pursuant to section 954,[6] which permits an owner of a chose in action to assign it to another person where it arises "out of the violation of a right of property, or out of an obligation." Such types of choses in action include, for example, breach of contract or damage to personal or real property. (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 504 [86 Cal.Rptr.2d 536]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 720, p. 805.) Exceptions to the general rule of assignability under section 954 are choses in action for wrongs done to the person, the reputation or the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage. (*Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg* (1994) 30 Cal.App.4th 1373, 1381 [36 Cal.Rptr.2d 424].)

Assignability under section 954 is limited to "[a] thing in action," a term defined in section 953 as "a right to recover money or other personal property by a judicial proceeding." By definition, "[t]he words 'personal property' include money, goods, chattels, things in action, and evidences of debt," and do not include "lands, tenements, and hereditaments," which instead are "real property." (§ 14.)

---

[6] Section 954 states: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."

## A. *First and Second Causes of Action*

The first cause of action for breach of the BCA Lot Line Agreement and the second cause of action for specific performance of the BCA Lot Line Agreement involve a right to recover an ownership interest in real property and not "a right to recover money or other personal property." (§ 953.) Thus, contrary to the Martins' contentions, the first and second causes of action were not choses of action assignable under section 954. They could be brought only by the real parties in interest, the Petersons. (Code Civ. Proc., § 367.)

The Martins also claim they had standing as parties to, or third party beneficiaries of, the BCA Lot Line Agreement.[7] They rely on the facts that they negotiated the agreement and lived on the property which was affected, and "accepted the terms of the agreement . . . on behalf of themselves and the Petersons." Also, they claim that the letters from the BCA board of directors' representative and BCA's attorney show they were parties, in that the letters were addressed to them and phrased as if they were parties.

In the FAC, however, the Martins admitted that the Petersons were the owners of the Property and the parties to be bound by the BCA Lot Line Agreement, and that the Martins' related actions were "on behalf of the Petersons." In the first cause of action, the Martins state that BCA "agreed in writing to accept the offer made by the [Martins] on behalf of the Petersons at a board meeting[] . . . , to have [BCA] deed the property contained in Lot Line Adjustment #1 and Lot Line Adjustment #2, to the Petersons (collectively, the 'BCA Lot Line Agreement') under certain terms and conditions. . . . The Martins accepted the terms of the agreement . . . on behalf of themselves and the Petersons." As a result of BCA's actions, "the Petersons were not able to landscape and hardscape their front yard . . . and side yard because they do not yet have their ownership of" the Adjustment Area. "As a result they have lost usage of their usable yard for more than four years . . . ."

As the quoted material from the FAC shows, the Martins also admitted that specific performance would require BCA to deed the Adjustment Area to the Petersons, not to the Martins. Thus, they had no standing to assert a cause of action, as they did, seeking specific performance of the Agreement "to transfer title and cooperate in the approval and transfer of title to the property . . . to Plaintiffs [i.e., the Martins]."

---

[7] We render no opinion as to the existence or terms and conditions of the alleged BCA Lot Line Agreement. For the purposes of reviewing the trial court's action on the demurrer only, for which we are required to assume the material facts pleaded to be true, we assume the BCA Lot Line Agreement existed.

██ The same facts that show that the Martins were not parties to the BCA Lot Line Agreement also show that the Martins were not intended to be third party beneficiaries of the BCA Lot Line Agreement. In order to qualify as third party beneficiaries, the Martins were required to plead and prove that the BCA Lot Line Agreement was made for their benefit. (*Schonfeld v. City of Vallejo* (1975) 50 Cal.App.3d 401, 420 [123 Cal.Rptr. 669].) " 'The test in deciding whether a contract inures to the benefit of a third person is whether an intent to so benefit the third person appears from the terms of the agreement . . . .' [Citation.]" (*Ibid.*) The fact that a third party is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to enforce it. (*Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724–1725 [33 Cal.Rptr.2d 291].) Reading the agreement as a whole in light of the circumstances under which it was made, the terms of the agreement must clearly manifest an intent to make the obligation inure to the benefit of the third party. (*Id.* at p. 1725; *Schonfeld, supra*, at p. 421.)

The Martins did not attach a signed written BCA Lot Line Agreement to the FAC. Neither did they quote the terms of the BCA Lot Line Agreement in the body of the FAC. Even if we assume that the facts pleaded were sufficient to allege an enforceable contract, as we previously discussed, the facts pleaded by the Martins were that the BCA Lot Line Agreement was made in order to require the BCA to deed the Adjustment Area to the Petersons, and the Martins' role was to negotiate the BCA Lot Line Agreement on behalf of the Petersons. Given their role, there is no significance to the fact that the letters from BCA's board and attorney were addressed to the Martins. (See *Jones v. Aetna Casualty & Surety Co., supra*, 26 Cal.App.4th at pp. 1724–1725.) The letter from BCA's board stated that the board approved the request for the "corner of your lot to be deeded over to you [i.e., the Petersons]" on the condition that the "homeowners" would bear the financial responsibility for costs of legal fees and moving the common area sprinklers from the lot to the common area. The references to "your lot," "deeded over to you," and the "homeowners" could only be intended to be to the Petersons, in that the Martins owned no lot and were not homeowners in the Bridgeport Community. Assuming that the letter correctly reflects the content of the BCA Lot Line Agreement, there is nothing in its terms that clearly manifests an intent by BCA or the Petersons to make the obligation inure to the benefit of the Martins. We conclude that the facts pleaded do not support a determination that the Martins are third party beneficiaries of the BCA Lot Line Agreement. (*Id.* at p. 1725; *Schonfeld v. City of Vallejo, supra*, 50 Cal.App.3d at p. 421.)

██ The Martins further contend that "[w]hether or not the property of [Lot Line Adjustment] #2 could be deeded to the Martins, they were entitled to at least receive an assignment of the damages." As the Martins assert, a

claim for damages to real property may be assigned without transferring title or possession of the damaged property. (*Stapp v. Madera Canal & Irr. Co.* (1917) 34 Cal.App. 41, 46 [166 P. 823].) In their prayer for relief, the Martins included a general request for damages as to all causes of action, but in the first and second cause of action, however, the Martins did not allege that the Petersons suffered monetary damages.[8]

### B. *Third Through Fifth, Seventh and Eighth Causes of Action*

The third through fifth, seventh and eighth causes of action are premised on duties BCA owed to the Petersons under the Bridgeport governing documents or the Davis-Stirling Act pertaining to rights and restrictions incident to ownership of real property. These are mutual among all of the lot owners in Bridgeport. (*Werner v. Graham* (1919) 181 Cal. 174, 183–184 [183 P. 945].) What is at issue is the right of enforcement of the governing documents and the Davis-Stirling Act.

The Martins contend that, under the CC&R's and sections 1351, 1354 and 1363 et seq., they are "bound parties" and, as such, have standing to enforce the CC&R's and R&R's.[9] They argue that, under the CC&R's definitions, "bound parties" include "all occupants, guests and invitees of any Unit," and therefore, the CC&R's allow enforcement by them in their capacity as occupants. (See CC&R's, art. III, § 3.1(e).) They assert that their standing to enforce the CC&R's is also shown by the fact that the CC&R's require the owner of a unit to provide his or her lessee with copies of the governing documents. (See CC&R's, art. III, § 3.1(c).) In support of their contention, they cite legal authority only for the proposition that CC&R's are interpreted like a contract. (*Cebular v. Cooper Arms Homeowners Assn.* (2006) 142 Cal.App.4th 106, 119 [47 Cal.Rptr.3d 666].)

We agree that the Martins are "bound parties" as defined in the CC&R's. They are subject to compliance with the restrictions in the governing documents. That status is different from being an owner of a separate interest who, by virtue of his ownership, is also a BCA member. Section 1354 provides that CC&R's "in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all

---

[8] In the first cause of action, the Martins allege that the Petersons lost the use of part of their yard due to BCA's breach, but they do not allege that the Petersons incurred monetary damages.

[9] With no legal authority cited, the Martins mistakenly assert that, given that the FAC states that BCA engaged in improper enforcement against the Martins, "this must be accepted as true." We must accept as true only the material facts alleged in the FAC for the purpose of reviewing the trial court's demurrer ruling. (*Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126.) "Improper enforcement" is an alleged conclusion of law, however, and we are not required to accept such conclusions as true. (*Ibid.*)

owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (*Id.*, subd. (a).) Subdivision (b) of section 1354 provides that "[a] governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association." Section 1351, subdivision (*l*)(3) provides that "[i]n a planned development, 'separate interest' means a separately owned lot . . . ."

■ In the instant case, as owners of lot 33, the Petersons qualify as "an owner of a separate interest" entitled to enforce the CC&R's, the R&R's and other governing documents of Bridgeport. (§§ 1351, subd. (*l*)(3), 1354, subds. (a), (b).) The Martins do not qualify. What is bound by an equitable servitude enforceable under CC&R's is a parcel, a lot, in a subdivided tract, not an individual who has no ownership interest in the lot. (See § 1354, subd. (a).) " '[W]hen the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others.' [Citation.]" (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 379–380 [33 Cal.Rptr.2d 63, 878 P.2d 1275].) Accordingly, the right of enforcement is inextricable from ownership of real property—a parcel, a lot—in a planned development such as Bridgeport and, thus, cannot be assigned absent a transfer of ownership of the parcel to which it applies.

■ The Petersons' Property and their membership in BCA, and consequently the rights of enforcement and duties they are owed, are indivisible interests under applicable law and Bridgeport governing documents. Section 1358, subdivision (c), provides that, in a planned development, any transfer of a separate interest includes the undivided interest in the common areas and any transfer of the separate interest owner's lot also includes membership in the association. Under the CC&R's, an owner is not allowed to subdivide a unit or change its boundary lines. (CC&R's, art. III, § 3.1(d).) The CC&R's state that "[e]very Owner shall be a Member of [BCA]. There shall be only one membership per Unit," regardless of the number of co-owners of the unit. (CC&R's, art. VI, § 6.2; see also Corp. Code, § 7312.)

■ The fifth and eighth causes of action are for relief based upon the violation of provisions of the Davis-Stirling Act, sections 1363 and 1364. Section 1363 provides that a common interest development such as Bridgeport must be managed by an association such as BCA and sets forth duties and powers of the association. As previously explained, membership in the association is limited to owners of separate interests. Section 1364

apportions responsibilities for maintenance of the common interest development between the association and owners of separate interests. As we previously concluded, the Petersons' rights, including membership in BCA, and the duties of BCA to the Petersons as owners of a separate interest, lot 33, are not assignable, whether set forth in the Bridgeport governing documents or in the Davis-Stirling Act.

The Martins cite no provision in the Davis-Stirling Act that authorizes an owner or a member to assign any right or obligation to any third party. The Martins mistakenly argue that section 1351 does not specifically define the term "owner," which is used in section 1363 et seq., and, therefore, they have standing to seek redress for violations of sections 1363 and 1364. The references in section 1364, subdivisions (a) through (c), however, are to an owner of a "separate interest," which is defined as noted in section 1351. Section 1364 clearly differentiates between an owner and residents such as the Martins. Section 1364, subdivision (e), states: "For purposes of this section, 'occupant' means an owner, resident, guest, invitee, tenant, lessee, sublessee, or other person in possession on the separate interest." Section 1364 primarily deals with the association's rights and responsibilities, including notifying "occupants," with respect to the presence of wood-destroying pests or organisms. (§ 1364, subds. (b), (d).)

In the seventh cause of action for negligence, the Martins claimed that BCA had a duty to them, "as residents and members," which BCA breached by improper use and maintenance of the watering system, which caused water damage to the Property. As previously discussed, they are not and do not qualify as members of the BCA. By law under the Davis-Stirling Act and equitable servitude principles applicable to the CC&R's, only owners are members of the BCA.

Citing *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573], the Martins contend that BCA had a common law duty "to exercise due care for the residents' safety in those areas under [the association's] control," similar to a duty a landlord owes to his tenants. (*Id.* at p. 499.) The duty they pleaded as being breached, however, was BCA's duty to maintain the common grounds. That duty arises out of the Davis-Stirling Act and the CC&R's, not out of common law principles of negligence. Thus, as we previously concluded, it is a duty owed only to members of BCA, i.e., the owners.

The Martins argue that they suffered damages to their vehicle, personal injury, loss of work, clean up due to the excess water, interference with their peaceful enjoyment of the Property and loss of use and enjoyment of the Property, and, therefore, have standing to bring negligence claims against

BCA on the basis of nuisance and trespass under section 3479, the statutory definition of nuisance, and related law.[10] These were not the elements the Martins pleaded as negligence, however. The damage they asserted was to the Property owned by the Petersons due to breach of a duty BCA owed to the Petersons.

Not being owners and, therefore, having no authority to enforce the CC&R's as equitable servitudes arising under the CC&R's, the Martins are not the real parties in interest for the seventh cause of action and do not have standing to maintain the cause of action. (§ 1354, subd. (a); Code Civ. Proc., § 367.)

█ In summary, the causes of action are not assignable and the Petersons, as owners of the Property, are the real parties in interest. The Martins failed to establish standing under any of the other arguments they advanced. Given that the causes of action are incidents of the Petersons' ownership of the Property, and the Martins have no ownership in the Property, we conclude that none of the causes of action can be reasonably amended to give the Martins standing. Accordingly, the court's action in sustaining the demurrer was proper.

The Martins were given leave to amend the complaint to state some other cause of action for which the Martins may have had standing and to substitute the Petersons as real parties in interest for the causes of action at issue in this appeal. The SAC was filed, but the Martins did not take the opportunity to state any such causes of action. Thus they forfeited the right to do so and remain a part of the action. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) Accordingly, the trial court properly entered judgment against the Martins in favor of BCA.

III. *Attorney's Fees and Costs*

█ The Martins contend that the trial court erred in awarding attorney's fees and costs to BCA. Section 1354, subdivision (c), states: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." The Martins contend that, nevertheless, if the trial court's finding that they did not have standing was based on the fact that they had no ownership in the Property and the CC&R's as well as the R&R's are enforceable only by the Property's owners under section 1354,

---

[10] The Martins also cite *White v. Cox* (1971) 17 Cal.App.3d 824 [95 Cal.Rptr. 259] as authority for the proposition that negligently maintaining a sprinkler system in a common area may serve as the basis of a claim for negligence. The plaintiff in that case, however, was a member of the common interest association and, thus, the case does not support the Martins' claim as to standing. (*Id.* at p. 831.)

then there was no basis for the fees and costs award. The mandatory attorney's fees and costs award under section 1354, subdivision (c), applies when a plaintiff brings an action to enforce such governing documents, but is unsuccessful because he or she does not have standing to do so. (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1014 [46 Cal.Rptr.3d 425].) Accordingly, we conclude that the trial court properly awarded attorney's fees and costs to BCA for defense against the complaints in which the Martins were named plaintiffs. (*Ibid.*)

## DISPOSITION

The judgment, including the award of attorney's fees, is affirmed. BCA is to recover its costs on appeal.

Perluss, P. J., and Woods, J., concurred.