Filed 10/21/25 Tennis Villas at Monarch Beach Homeowners Assn. v. Ure CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| TENNIS VILLAS AT MONARCH BEACH HOMEOWNERS ASSOCIATION,<br><br>      Plaintiff, Cross-defendant and Respondent,<br><br>               v.<br><br>ERNESTO MARTIN URE et al.,<br><br>      Defendants, Cross-complainants and Appellants. | G063452, G063954<br><br>(Super. Ct. No. 30-2022-01242166)<br><br>O P I N I O N |

Appeal from a judgment and postjudgment orders of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed.

Decker Law, James Decker and Griffin Schindler for Cross-complainants and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Ernest Slome; The Perry Law Firm, Michael R. Perry and Larry M. Roberts for Cross-defendant and Respondent.

Defendants Ernesto Martin[1] Ure and Jani Hall Nomad (collectively, defendants) rented a condominium (the property) from Nomad's sister, Julie LeVay, before eventually buying the property. While LeVay owned the property, an architectural application to renovate the property was submitted to and denied by the homeowners association, plaintiff Tennis Villas at Monarch Beach Homeowners Association (the HOA). Defendants purchased the property after the application was denied and performed some work on the property. The HOA filed a complaint, and defendants filed a cross-complaint. Following a bench trial, the trial court found the HOA had proven three of its claims, and defendants did not have standing to assert their claims because they did not own the property when the application was submitted and denied. The court subsequently awarded attorney fees and costs to the HOA.

Defendants appealed from the judgment and the postjudgment orders awarding attorney fees and costs. We conclude the trial court did not err in finding defendants lacked standing because they did not own the property when the application was submitted and denied. We also conclude the court did not err in awarding attorney fees and costs. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2022, the HOA filed its complaint against defendants, asserting causes of action for breach of the Covenants, Conditions and Restrictions and Reservations of Easements (CC&Rs), declaratory relief, trespass, and nuisance. Defendants filed a cross-complaint

_____

[1] At times in the record on appeal, Ure's middle name is also spelled as "Martine." Given Ure spelled his middle name as "Martin" at trial, this opinion uses "Martin."

and first amended cross-complaint against the HOA.[2] The first amended cross-complaint asserted causes of action for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and declaratory relief.

I.

TRIAL

*A. Evidence at Trial*

The case proceeded to a bench trial over nine days. More than 10 witnesses testified and numerous exhibits were admitted.

Ure testified, in May 2021, he and Nomad signed a lease to rent the property from LeVay with an option to purchase (they had lived in the property prior to that). Ure said he and Nomad had been talking about renovating the property since early 2020, and they visited different homes in the community that had been renovated to get ideas.

Caron, who was the president of the HOA and a member of the architectural committee, had multiple discussions with defendants related to renovations, including providing, in May 2021, copies of old renovation plans to his unit. Caron said he provided the plans because he was friends with defendants. In October 2021, defendants hosted a wine and cheese event at the property, and Caron, Caron's wife, David Stantley (another board member), and Stantley's wife attended.[3] During that event, defendants

---

[2] Ure and Nomad were named in the complaint and first amended cross-complaint in their individual capacities and as co-trustees of the Ernesto Martin Ure Living Trust and Jani Hall Nomad Living Trust. Jeffrey Caron was named as a cross-defendant in the initial cross-complaint but not the first amended cross-complaint.

[3] Nomad said another neighbor also attended.

3

discussed their proposed renovation, including showing a rendering of the proposed renovation.

On October 21, LeVay emailed the HOA stating she owned the property, and that defendants had rented the property and would be purchasing it from her in the near future. LeVay noted defendants were planning to remodel; she authorized them to make an application to the HOA for approval of their project. An architectural application, which was signed by LeVay, was submitted on October 25. At the time the architectural application was submitted, LeVay owned the property. Caron said the HOA did not accept applications from nonowners because nonowners are not members of the HOA, but the HOA does allow proxies.

After receiving the architectural application, Caron said he communicated with defendants to receive additional information. Caron and Karen Harris, another member of the architectural committee, also consulted with Jay Schuette, who recommended denying the application. Schuette had been on the architectural committee prior to Caron.[4]

On November 22, the HOA sent a letter addressed to LeVay stating the architectural application was denied. The letter stated, inter alia, the proposed modifications in the application would intrude into and significantly impact the common area and structural profile of the building.

On November 30, Ure responded by letter. His letter stated, inter alia, "we have come to the conclusion that the decision letter submitted with regards to our application fails to qualify as a bona fide response that would

---

[4] Schuette has a civil engineering degree, but he does not have a contractor's license and is not a licensed civil engineer, structural engineer, or architect.

legitimately reset the 45-day response deadline set forth in the CC&Rs. Unless you provide legitimate and valid reasons substantiated by existing laws and guidelines within the 45-day period after receipt of our initial submission, we shall deem our application approved as is duly noted in the CC&Rs ([a]rticle XI, [s]ection 6)." (Boldface and underscoring omitted.)

On December 2, the HOA sent a letter addressed to LeVay, disagreeing with assertions in the November 30 letter. The letter stated, inter alia: "Please be advised that your letter dated November 30, 2021, is being considered an appeal as provided for in [a]rticle XI, [s]ection 12. The [b]oard intends to confer with its structural engineer and legal counsel and will submit a written decision within 45 days. During this appeal period, no work shall be done within your unit since the [b]oard's prior denial remains in place unless that decision is amended after further consideration. Your anticipated cooperation is appreciated." Caron also testified he spoke with Steven Helfrich, who was a civil engineer.[5] Ure testified he did not intend his November 30 letter to be an appeal.

On December 6, Ure responded by letter and again raised disputes regarding the denial of the application. The letter indicated defendants had "completed the acquisition of the condo" and "will become the legal owners . . . with the recording of the deed on December 7, 2021." The parties agree defendants became the owners of the property on December 7.

---

[5] In a January 3, 2022 email, Helfrich noted he had done similar projects and there were no extraordinary risks. Helfrich testified the proposed work to the property was significantly more complicated and complex than the work he had done at the other unit he was referring to in his email.

On December 23, the HOA sent a letter addressed to Ure and disputed Ure's assertions. The letter noted, inter alia, Ure had declined the board's consideration of an appeal, but the board had done additional investigation, which solidified the board's original denial of the application.

Nomad testified Ure performed some work on the property between Christmas and the end of 2021, but work was not done after then.[6] Ure described this work as "partial demolition to identify the structural members to see if we could come up with a plan B or an alternative scope of work that will be maybe—will not require so much changes in the common area." Schuette testified he estimated the cost to repair to be $8,000 to $10,000.

On January 3, 2022, the HOA sent a letter addressed to Ure, asserting he was performing construction at the property and demanding he cease and desist construction. The letter also requested to schedule a meeting with the board within five days. On January 5, Ure responded they would be happy to meet with the board but would be out of town until January 16 and requested to meet during the week of January 17. Ure noted they would stop work until the meeting with the board and requested "a written letter including your engineer's notes, comments, drawing, calculations, concerns, etc." that were raised in the last letter. On January 18, the HOA informed Ure it had scheduled a meeting for January 19. On January 19, defendants' trial counsel requested information. Defendants did not attend the meeting. Ure said they did not attend the meeting because they had not received the

---

[6] Caron testified he saw changes in the property after the lawsuit was filed.

6

additional information to have a meaningful discussion with the board and they had another engagement.

*B. The Trial Court's Decision*

On October 18, 2023, the trial court issued its statement of decision.[7] The court found defendants took title to the property on December 7, 2021, and on December 8, 2021, they re-conveyed title to the property to themselves as co-trustees of the Ernesto Martin Ure Living Trust and Jani Hall Nomad Living Trust. The court found, after defendants became owners of the property and without permission from the HOA, they "removed a non-structural pony wall; removed decorative column covers on two columns in the living room; removed drywall between the living room and laundry room; removed parts of the ceiling; removed part of a soffit; removed studs/posts from corners; added studs for support; and tied together electrical wires previously encased by a wall."

The trial court determined defendants violated the CC&Rs by removing, damaging, and destroying the common area and making changes to the common area without approval. The court stated the HOA had proven damages by Schuette's testimony that the cost of repair would be approximately $10,000. Thus, the court found the HOA had proven by a preponderance of the evidence its claim for breach of the CC&Rs.[8] The court also found the HOA had proven by a preponderance of the evidence its claims

---

[7] Defendants previously filed objections to the proposed statement of decision and proposed judgment.

[8] The trial court also found the HOA complied with all statutory and governing document requirements prior to filing this action and sections 5930 to 5965 of the Civil Code (all undesignated statutory references are to this code) did not apply.

7

for trespass and nuisance. The court did not grant declaratory relief because it was unnecessary and superfluous.

As relief, the trial court ordered defendants "to restore the load-bearing walls, the dry wall attached thereto, the two by four studs/posts, and portions of the ceilings and soffit in their [p]roperty to the condition they were prior to their unapproved modifications and destruction." The court determined the HOA was not entitled to punitive damages. It found credible that defendants "had done the work on their [p]roperty to determine what kind of remodeling could be done" and "did no further work on their [p]roperty after receiving the cease and desist letter."

Regarding the first amended cross-complaint, the trial court explained the CC&Rs provide that the HOA or an owner of a condominium has the right to enforce the covenants, and membership in the association held by an owner cannot be transferred. The court found the architectural application was submitted on October 25, 2021, and at that time, LeVay owned the property. The court recognized the HOA denied the application on November 22, 2021. The court found defendants became owners of the property on December 7, 2021, and thus, the architectural application was submitted and denied before defendants owned the property. The court further found LeVay, Ure, and Nomad did not appeal the denial of the architectural application.

The trial court also found all of the first amended cross-complaint claims are based on the HOA's denial of the architectural application for the property and premised on duties owed to an owner pursuant to the governing documents or the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act; § 4000 et seq.). The court noted defendants had "failed to submit any evidence, oral or written, and failed to provide any argument or

8

legal support for their assertion that they had standing by virtue of their intent to purchase the property or their being in escrow to purchase the subject property." The court ultimately concluded defendants lacked standing as to all of their claims. The court also rejected defendants' argument that the HOA should be estopped from asserting they lacked standing.

On October 18, the trial court entered judgment. Defendants filed a notice of appeal from the judgment.[9]

## II.

### ATTORNEY FEES AND COSTS

On October 31, the HOA filed a motion for attorney fees and costs seeking $552,252.68 and a memorandum of costs seeking $123,720.08. On November 17, defendants filed a motion to strike or tax costs. The parties filed additional briefing regarding attorney fees and costs.

On February 13, 2024, the trial court issued its order on the HOA's attorney fees motion. The court determined the HOA was the prevailing party. Regarding defendants' argument the HOA should not be awarded fees because it did not attempt to engage in alternative dispute resolution prior to filing this lawsuit, the court noted it had previously rejected the argument that the HOA had failed to engage in alternative dispute resolution because this matter did not fall within section 5930. The court reduced some of the requested attorney fees and otherwise found the attorney fees to be reasonable and necessary. The court awarded to the HOA $401,918.50 in attorney fees.

---

[9] The HOA cross-appealed from the judgment. That appeal was dismissed after the HOA filed a request for dismissal.

On March 1, the trial court issued its order on defendants' motion to strike or tax costs. It awarded to the HOA $21,029.23 in costs.

Defendants filed a notice of appeal from the postjudgment orders awarding attorney fees and costs. The appeals from these postjudgment orders and the judgment were consolidated.

## DISCUSSION

On appeal, defendants argue the trial court erred in finding they lacked standing. Defendants also argue the awards of attorney fees and costs should be reversed. We disagree.

## I.

### STANDING

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Standing is a question of law typically reviewed de novo, but to the extent the trial court made factual findings relevant to the issue of standing, we review those findings for substantial evidence. (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.)

"Standing is the threshold element required to state a cause of action . . . ." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 (*Martin*).) "To have standing to sue, a person, or those whom he properly represents, must '"have a real interest in the

10

ultimate adjudication because [he] has [either] suffered [or] is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." [Citation.]' [Citation.] Code of Civil Procedure section 367 establishes the rule that '[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.' A real party in interest is one who has 'an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action.'" (*Id.* at pp. 1031–1032.)

Martin is instructive. There, the Petersons owned a home in a planned development community. (*Martin, supra*, 173 Cal.App.4th at p. 1027.) The Martins agreed with the Petersons that the Martins would live at the home and pay all associated costs, and the Martins would deal directly with the homeowners association. (*Id.* at pp. 1027–1028.) The Petersons also executed a power of attorney and agreed to assign all of their rights, title, and interest in their causes of action asserted in the first amended complaint to the Martins. (*Id.* at p. 1028.) The Petersons and the Martins sued the homeowners association related to a dispute regarding the lot lines. (*Id.* at pp. 1028–1029.) The trial court sustained a demurrer as to the Martins' causes of action because they lacked standing.[10] (*Id.* at pp. 1029–1030.)

The appellate court in *Martin* affirmed, explaining the Martins did not have any ownership interest in the home and "ownership in the [lot] is a prerequisite to standing to assert each of the causes of action as each

---

[10] The trial court sustained the demurrer as to one of the Martins' causes of action on a different ground, but the Martins did not challenge that ruling on appeal. (*Martin, supra*, 173 Cal.App.4th at p. 1029, fn. 4.)

seeks redress for violations of rights of the owners of the [lot], for which the causes of action are not assignable to the Martins." (*Martin, supra*, 173 Cal.App.4th at p. 1032.) The appellate court noted five of the causes of action were "premised on duties [the homeowners association] owed to the Petersons under the Bridgeport governing documents or the Davis-Stirling Act pertaining to rights and restrictions incident to ownership of real property." (*Id.* at p. 1035.)[11] The appellate court stated the Petersons were entitled to enforce the covenants and other governing documents as "'an owner of a separate interest'" but the Martins could not. (*Id.* at p. 1036.) The appellate court further explained, "What is bound by an equitable servitude enforceable under CC&Rs is a parcel, a lot, in a subdivided tract, not an individual who has no ownership interest in the lot. [Citation.] '"[W]hen the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others." [Citation.]' [Citation.] Accordingly, the right of enforcement is inextricable from ownership of real property—a parcel, a lot—in a planned development such as Bridgeport and, thus, cannot be assigned absent a transfer of ownership of the parcel to which it applies."

---

[11] The other two causes of action were for breach and specific performance of a separate lot line agreement in which the homeowners association allegedly agreed to deed certain land to the Petersons, and the appellate court concluded the Martins did not have standing and the causes of action were not assignable. (*Martin, supra*, 173 Cal.App.4th at pp. 1028, 1033–1035.)

(*Ibid.*) The appellate court thus concluded the Petersons were the real parties in interest and the Martins did not have standing. (*Id.* at p. 1038.)

Here, the trial court correctly concluded defendants did not have standing because they did not own the property when the architectural application was submitted and denied. As the court explained, the CC&Rs provide the HOA or the owner of a condominium the right to enforce all covenants.[12] Additionally, the CC&Rs provide an owner is a member of the HOA, and membership in the HOA cannot be transferred except as incidental to the sale of a condominium. Importantly, defendants were not owners of the property when the application was submitted and denied. Moreover, as the court found, all of the claims in the first amended cross-complaint are based on the denial of the architectural application for the property and duties owed to an owner under the governing documents or the Davis-Stirling Act.[13] Thus, similar to the nonowners in *Martin, supra*, 173 Cal.App.4th at page

---

[12] Under section 5975, subdivision (a), "covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." Additionally, "Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (§ 5975, subd. (a).) For a condominium project, a separate interest means the individual unit. (§ 4185, subd. (a)(2).)

[13] Defendants have not argued on appeal the trial court erred in finding their claims are based on the denial of the architectural application and duties owed to an owner under the governing documents or the Davis-Stirling Act.

1038, defendants do not have standing because they were not owners at the time the application was submitted and denied.[14]

Defendants attempt to distinguish *Martin* because the Martins never became owners and defendants now own the property. Defendants say they "inherited the right to enforce the CC&Rs" and LeVay's "transfer of the [p]roperty equated to a valid assignment of the right to enforce the CC&Rs." Defendants are correct it was not alleged the Martins became owners in *Martin, supra*, 173 Cal.App.4th at pages 1027–1030, but this is not a significant distinction under these circumstances. Although defendants may have standing to enforce a new violation of the CC&Rs, that does not mean defendants have standing to enforce all past violations of the CC&Rs before they became owners.[15]

Similarly, defendants assert "standing must exist at the time a plaintiff *commences an action*," they are now owners, and thus, they had standing at the time they filed their cross-complaint. This argument is misplaced as it does not address whether a plaintiff has standing to assert a

---

[14] Defendants have not argued on appeal the trial court erred in finding estoppel did not apply.

[15] Defendants argue the purpose of standing is to protect a defendant from multiple lawsuits, LeVay would not have standing to bring a claim based on the denial of the application, and they must have standing because otherwise no one would have standing. However, as an owner, LeVay would have had standing to bring a claim based on the denial of the application at least until she sold the property. As LeVay is not a cross-claimant in this case, we need not address whether she still has standing even after selling the property. Additionally, defendants have not pointed to evidence on appeal LeVay actually assigned to defendants any claim she may have had related to the denial of the application, and thus, we do not address whether such an assignment could have been effective.

14

particular claim, and as discussed, defendants did not have standing to assert their claims here.

In their reply brief, defendants argue they "were third-party beneficiaries to the HOA's decision." Defendants failed to raise this argument in their opening brief, and thus, it is forfeited. (See *Ione Valley Land, Air, & Water Defense Alliance, LLC v. County of Amador* (2019) 33 Cal.App.5th 165, 173 [noting ""'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before'""].)[16]

## II.

### ATTORNEY FEES AND COSTS

Pursuant to section 5975, subdivision (c), "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." Here, the trial court found the HOA to be the prevailing party and awarded certain attorney fees and costs. The court's determination regarding attorney fees is typically reviewed for abuse of discretion, but where the propriety of the award turns on statutory interpretation, we review the statutory interpretation issue de novo. (See *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260–261, 263; *Department of Fair Employment & Housing v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 412.) On appeal, defendants do not dispute the HOA was the prevailing party, nor do they

---

[16] Defendants also assert "judgment on the [c]omplaint should be reversed pending an outcome on the [c]ross-[c]omplaint." Given we affirm the ruling on the cross-complaint, we need not address whether the ruling on the HOA's complaint should be reversed if the ruling on the cross-complaint is reversed.

15

dispute the general reasonableness of the hours worked and the rate.[17] Instead, defendants cite to sections 5930 and 5960 and argue the awards must be reversed because the court did not consider the HOA's purported refusal to participate in alternative dispute resolution prior to filing its complaint. This argument is unavailing.

Under section 5930, subdivision (a), "An association or a member may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to alternative dispute resolution pursuant to this article."[18] However, subdivision (b) of section 5930 provides: "This section applies only to an enforcement action that is solely for declaratory, injunctive, or writ relief, or for that relief in conjunction with a claim for monetary damages not in excess of the jurisdictional limits stated in [s]ections 116.220 and 116.221 of the Code of Civil Procedure." Here, the trial court correctly concluded section 5930 did not require the HOA to endeavor to submit the dispute to alternative dispute resolution prior to filing the action

---

[17] Defendants also do not advance any arguments on appeal specifically challenging any costs as being improper.

[18] Section 5925, subdivision (a) defines alternative dispute resolution as "mediation, arbitration, conciliation, or other nonjudicial procedure that involves a neutral party in the decisionmaking process. The form of alternative dispute resolution chosen pursuant to this article may be binding or nonbinding, with the voluntary consent of the parties."

16

because the claim for monetary damages was in excess of the limits stated in sections 116.220 and 116.221 of the Code of Civil Procedure.[19]

Without citing case law, defendants assert the HOA was not awarded any monetary damages and "[p]olicy favors a determination that section 5930 required alternative dispute resolution in this case, regardless of what the HOA alleged in its [c]omplaint." To the extent defendants are arguing section 5930's requirement regarding alternative dispute resolution applied because the HOA did not actually recover monetary damages, that argument is contrary to the plain language of the statute, which exempts from section 5930 an enforcement action where there is "a claim for monetary damages" above a certain threshold. (§ 5930, subd. (b).) The statute does not require an actual recovery of monetary damages above a certain threshold.

Defendants also argue section 5960 applies even where alternative dispute resolution is not required. Section 5960 provides: "In an enforcement action in which attorney's fees and costs may be awarded, the

_____

[19] Code of Civil Procedure sections 116.220 and 116.221 provide the jurisdictional limits for small claims court, which included, in 2022 when the complaint was filed, a maximum threshold amount for a demand for the recovery of money of $5,000 under former Code of Civil Procedure section 116.220, subdivision (a)(1) (Stats. 2009, ch. 468, § 1) or $10,000 for an action brought by a natural person under former Code of Civil Procedure section 116.221 (Stats. 2018, ch. 92, § 41). The HOA's complaint alleged damages of "no less than the jurisdictional amount of this court." On appeal, defendants have not argued the HOA's complaint failed to allege damages in excess of the limits stated in sections 116.220 and 116.221 of the Code of Civil Procedure. In their opposition to the attorney fee motion in the trial court, defendants conceded the complaint alleged damages in excess of $25,000. When the complaint was filed in 2022, $25,000 was the maximum threshold for the amount in controversy for limited civil cases under former section 85, subdivision (a) and former section 86, subdivision (a)(1) of the Code of Civil Procedure. (Stats. 2015, ch. 176, § 3; Stats. 2013, ch. 605, § 22.)

17

court, in determining the amount of the award, may consider whether a party's refusal to participate in alternative dispute resolution before commencement of the action was reasonable." According to defendants, the trial court committed legal error by determining section 5960 applies only when alternative dispute resolution is required, and instead, the court should have exercised its discretion to reduce the amount of the award because of the HOA's refusal to participate in alternative dispute resolution.

Even if section 5960 is not limited to when section 5930 applies, section 5960 does not apply under the circumstances here. Defendants have not cited any evidence on appeal showing they actually requested alternative dispute resolution. The HOA filing the lawsuit without attempting to submit the matter to alternative dispute resolution is not the same as a "refusal" to participate in alternative dispute resolution.

## DISPOSITION

The judgment and postjudgment orders are affirmed. Respondent shall recover its costs on appeal.

DELANEY, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

GOODING, J.

18