Filed 12/23/20  P. v. Rutherford CA4/2
*See concurring opinion*

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E073700 |
| v. | (Super.Ct.No. RIC1902577) |
| JAMES RUTHERFORD et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge.

Affirmed.

Michael A. Hestrin, District Attorney, Emily R. Hanks and Timothy S. Brown, Deputy District Attorneys, for Plaintiff and Appellant.

The Civil Justice Association of California and Fred J. Hiestand as Amicus Curiae on behalf of Plaintiff and Appellant.

Bremer Whyte Brown & O'Meara, Benjamin L. Price and Courtney M. Serrato for Defendants and Respondents James Rutherford and The Association for Equal Access.

1

Callahan & Blaine, Daniel J. Callahan, David J. Darnell and Drew Harbur for Defendants and Respondents Law Offices of Babak Hashemi, Babak Hashemi, Manning Law, Joseph R. Manning, Michael J. Manning and Craig Cote.

## I.  INTRODUCTION

In this civil action, the People allege in their complaint that defendants and respondents, comprised of two litigants, two law firms, and four attorneys[1] (collectively, defendants), engaged in an unlawful business practice, in violation of the unfair competition law (the UCL) (Bus. & Prof. Code, § 17200, et. seq.), by filing and pursuing approximately 120 "fraudulent ADA lawsuits," falsely accusing Riverside County businesses and individuals of violating the Americans with Disabilities Act (the ADA) (42 U.S.C. § 12181, et seq.), in order to extort monetary settlements from the defendants in the ADA lawsuits.  The People seek to enjoin defendants from filing and pursuing fraudulent ADA lawsuits, along with civil penalties of not less than $1,000,000 from each defendant, and "full restitution" to the victims of defendants' unfair "ADA lawsuit scheme."

The trial court sustained defendants' general demurrer to the People's complaint (Code Civ. Proc., § 430.10, subd. (e)), without leave to amend, and entered a judgment of dismissal on the ground that the litigation privilege (Civ. Code, § 47, subd. (b)) protected

---

[1] Defendants and respondents are James Rutherford, an individual, The Association for Equal Access ("A4EA"), an unincorporated entity founded by Rutherford, two law firms, The Law Offices of Babak Hashemi ("Hashemi Law") and Manning Law, APC ("Manning Law"), and four attorneys, Babak Hashemi, Joseph R. Manning Jr., Michael J. Manning, and Craig Cote.

defendants' communications in filing and pursuing the ADA lawsuits. In this appeal, the People claim their UCL claim falls outside the scope of the privilege because it alleges that defendants violated three criminal statutes, each more specific in their operation than the privilege: Penal Code section 484 (theft by false pretenses), Penal Code section 523 (extortion by writing), and Business and Professions Code section 6128, subdivision (a) (deceit and collusion by attorneys). The People also claim that the privilege does not apply because they were not a party to the ADA lawsuits. We agree that the litigation privilege applies to the People's UCL claim, and we affirm the judgment of dismissal.

## II. FACTS AND PROCEDURE

### A. *The Allegations of the People's Complaint*[2]

James Rutherford is a plaintiff in approximately 120 lawsuits, filed in federal court, alleging ADA violations against "Riverside County individuals and/or businesses" (the ADA lawsuits). A4EA, an unincorporated entity founded by Rutherford, is a plaintiff in approximately 26 of the 120 ADA lawsuits in which Rutherford is also a plaintiff. Hashemi Law, and attorney Babak Hashemi, filed the approximate 26 ADA lawsuits in which Rutherford and A4EA are plaintiffs. Manning Law, and attorneys Joseph R. Manning, Jr., Michael J. Manning, and Craig Cote, filed the approximate 94 ADA lawsuits in which only Rutherford is plaintiff. Manning Law "typically" files ADA

---

[2] In keeping with our standard of review of the order sustaining the demurrer, we assume the truth of the complaint's well-pleaded, nonconclusory factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *PGA West Residential Assn. Inc. v. Hulven Internat.*, *Inc.*, (2017) 14 Cal.App.5th 156, 164, fn. 3, 168.) We summarize those factual allegations in this section.

lawsuits on behalf of Rutherford, and Hashemi Law files ADA lawsuits on behalf of Rutherford and A4EA.

Defendants have collectively filed "some 323 lawsuits"—approximately 300 in federal court, alleging ADA violations, and approximately 23 in state court, alleging violations of the Unruh Civil Rights Act (the Unruh Act) (Civ. Code, § 51 et seq.). The 300 federal court lawsuits also alleged violations of the Unruh Act, and include the 120 ADA lawsuits in which Rutherford, or Rutherford and A4EA, are plaintiffs.

The ADA lawsuits generally contain the "same boilerplate allegations." Each alleges that: Rutherford is a California resident with a qualified ADA disability (see 42 U.S.C. § 12102(2)); Rutherford attempted to visit the businesses of the defendant(s) in the ADA lawsuits on certain dates or in given months; when Rutherford attempted to visit the businesses, he encountered at least one " 'architectural barrier,' " for example, a non-ADA compliant handicap parking space, signage, curb ramp, or access route; as a result of these barriers, Rutherford was "deterred from patronizing" the businesses and "suffered difficulty, humiliation and/or frustration"; following his first attempted visit, and despite the architectural barriers and ADA violations, Rutherford intended to return to the businesses in order to avail himself of their goods and services and to ensure that they complied with the ADA. In each ADA lawsuit, Rutherford and A4EA sought injunctive relief to remedy the ADA violations, plus "mandatory minimum" damages of at least $4,000 for each alleged Unruh Act violation.

Rutherford did not visit any of the businesses sued in the ADA lawsuits "for good faith purposes"; rather, he visited each business for the sole purpose of initiating a federal

4

ADA lawsuit against it. Rutherford also had no "good faith intention" to return to any of the businesses, and he did not return to any of the businesses after the ADA lawsuit against each business was filed. Rutherford was never "denied, by way of any architectural barriers, full access and/or full enjoyment at any of the businesses sued" in any of the ADA lawsuits, based on his claimed disabilities. Rutherford had been observed "on multiple occasions, walking and ambulating without difficulty," and engaging in behavior "inconsistent with the claims" in the ADA lawsuits. None of the businesses sued in the ADA lawsuits have any record of Rutherford entering their businesses, including video evidence, purchase or appointment records, or verbal or written complaints concerning the alleged ADA or Unruh Act violations. A4EA is controlled by Rutherford, has "no more than a few members," is "nothing more than a website," and was "used" by defendants "to increase fear and exact settlements" from the defendants sued in the ADA lawsuits.

The complaint thus alleges that Rutherford lacked standing to file and maintain the ADA lawsuits, and that defendants were fully aware of Rutherford's lack of standing, and his ability to fully ambulate without aid, when each ADA lawsuit was filed. "Defendants colluded, conspired and/or otherwise agreed to engage in an ADA lawsuit scheme, designed to defraud, extract and/or extort money settlements from Riverside County individuals and businesses, based on the fraud, misrepresentations and false allegations contained in each and every one of the federal ADA lawsuits."

Based on defendants' pursuit and filing of the ADA lawsuits, the complaint alleges two causes of action against each defendant: the first for engaging in unfair

5

competition in violation of Business and Professions Code section 17200 (the UCL claim), and the second for making false and misleading statements in violation of Business and Professions Code section 17500.  As part of its UCL claim, the complaint alleges that, by filing and pursuing the ADA lawsuits, each defendant violated Penal Code sections 484 (grand theft) and 523 (extortion by writing).

The complaint further alleges that Hashimi Law, Manning Law, and the four attorney defendants[3] violated Business and Professions Code sections 6106 (attorney's commission of any act involving moral turpitude, dishonesty, or corruption constitutes a cause for disbarment or suspension) and 6128 (attorney deceit or collusion, with intent to deceive the court or any party, is a misdemeanor), along with former rules 1-120 and 3-200 of the Rules of Professional Conduct.[4]  The complaint seeks to enjoin defendants from engaging in the "unlawful, unfair, and fraudulent business practices" of filing and pursuing false ADA lawsuits; to impose a civil penalty of not less than $1,000,000 on each defendant, and "full restitution" to the victims of defendants' "ADA lawsuit scheme."

---

[3]  See footnote 1, *ante*.

[4]  References to rules are to the Rules of Professional Conduct.  Former rule 3-200 prohibited a California bar member from seeking, accepting, or continuing employment if the member knew or had reason to know that the objective of the employment was to bring an action or assert a position in litigation without probable cause.  Former rule 1-200 prohibited a member of the California bar from knowingly assisting, soliciting, or inducing any violation of the rules or the State Bar Act. (Bus. & Prof. Code, § 6000 et. seq.)

B. *Defendants' Demurrer and the Trial Court's Ruling*

Defendants filed a general demurrer to the complaint, that is, they claimed it failed to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) They argued that their alleged conduct and statements in filing and pursuing the ADA lawsuits were "absolutely protected by California's litigation privilege."[5] The People opposed the demurrer.

Following a hearing, the trial court concluded that it was very clear that the litigation privilege protected defendants' communications made in, and in furtherance of, the ADA lawsuits, and there was no reasonable possibility that the complaint could be amended to state a cause of action. The court thus sustained the demurrer, without leave to amend, and entered judgment dismissing the complaint. The People filed this timely appeal.

## III. DISCUSSION

A. *Standard of Review*

A general demurrer to a complaint is properly sustained when the complaint fails to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10,

---

[5] Defendants alternatively claimed that their actions and communications in filing and pursuing the ADA lawsuits constituted protected petitioning activity under the First Amendment and the *Noerr-Pennington* doctrine, and that the second cause of action did not state a claim because they did not engage in any "advertising," as that term is used in Business and Professions Code section 17500. The trial court did not rule on these alternative grounds for the demurrer, given its conclusion that the litigation privilege applied to the entire complaint. We also do not reach these issues, given our conclusion that the litigation privilege applies to the People's UCL claim, and given that the People have abandoned their False Advertising Law (FAL) claim (Bus. & Prof. Code, § 17500). See footnote 6, *post*.

7

subd. (e); see *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 566.)  Our review of the resulting judgment of dismissal is de novo.  (*Roy Allan Slurry Seal, Inc. v. American Asphalt South*, *Inc.* (2017) 2 Cal.5th 505, 512.)

In determining whether the complaint states a cause of action, we assume the truth of its well-pleaded factual allegations, but not contentions, deductions, or conclusions of fact or law.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)  We affirm the judgment of dismissal " 'if any one of the several grounds of demurrer is well taken.' "  (*Wiseman Park*, *LLC v. Southern Glazer's Wine & Spirits*, *LLC* (2017) 16 Cal.App.5th 110, 116.)

On appeal, the plaintiff has the burden of showing that the facts pleaded in the complaint are sufficient to establish every element of the cause of action, and to overcome the legal grounds on which the trial court sustained the demurrer.  (*Martin v. Bridgeport Community Assn.*, *Inc.* (2009) 173 Cal.App.4th 1024, 1031.)  The People have not met this burden.  As we explain, the litigation privilege applies to the People's complaint, and the People have not shown that an exception to the privilege applies.

B.  *The Litigation Privilege*, *Overview*

The litigation privilege, codified at Civil Code section 47, subdivision (b), "states the long-established rule that publications made in the course of a judicial proceeding are absolutely privileged."  (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 379 [former Civ. Code, § 47(2)].)  The privilege has been given "broad application."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211.)  Although it was originally enacted to immunize defendants from liability for the tort of defamation, the privilege currently applies to all

8

communications, whether or not they amount to publications, and to all torts except malicious prosecution.  (*Id*. at p. 212.)

The "usual formulation" is that the privilege applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action."  (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.)  "The privilege 'is not limited to statements made during a trial or other [judicial or quasi-judicial] proceedings, but may extend to steps taken prior thereto, or afterwards.' "  (*Action Apartment Assn.*, *Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment Assn.*).)

The privilege serves important public policies.  Its principal purpose is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 213.)  The privilege also promotes the effectiveness of judicial proceedings and the administration of justice by encouraging " 'open channels of communication and the presentation of evidence,' " and by enabling attorneys to "zealously protect their clients' interests" without the threat of subsequent derivative tort actions.  (*Id*. at pp. 213-214.)  " '[It] is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative tort] actions . . . .' "  (*Id*. at p. 214.)

The privilege also serves to promote the finality of judgments:  "[I]n immunizing participants from liability for torts arising from communications made during judicial

9

proceedings, the [privilege] places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 214.) "For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." (*Ibid.*)

Although the privilege is held to be "absolute in nature" to effect its purposes (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 215), it is "not without limit." (*Action Apartment Assn.*, *supra*, 41 Cal.4th at p. 1242.) In *Action Apartment Assn.*, our Supreme Court noted that the privilege does not apply in *criminal prosecutions* for perjury (Pen. Code, § 118, et seq.), subornation of perjury (Pen. Code, § 127), and filing a false crime report (Pen. Code, § 148.5). (*Action Apartment Assn.*, at p. 1246.) Likewise, the privilege does not apply in criminal prosecutions or State Bar disciplinary proceedings for soliciting attorney business through runners or cappers (Bus. & Prof. Code, §§ 6152-6153), or for violating Business and Professions Code section 6128, which, as relevant here, makes it a misdemeanor for an attorney to engage in deceit or collusion with the intent to deceive the court or any party. (*Action Apartment Assn.*, at p. 1246.)

The court in *Action Apartment Assn.* noted that these particular exceptions to the privilege "ha[ve] been guided by the 'rule of statutory construction that particular provisions will prevail over general provisions.' " (*Action Apartment Assn.*, *supra*, 41 Cal.4th at p. 1246; Civ. Code, § 1859.) "Each of the above mentioned statutes is more specific than the litigation privilege and would be [rendered] significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege. The crimes of perjury and subordination of perjury would be almost without meaning if statements made during the course of litigation were protected from prosecution for perjury by the litigation privilege. The misdemeanors established by Business and Professions Code section 6128 evince a legislative intent that certain attorney conduct not be protected from prosecution by the litigation privilege." (*Action Apartment Assn.*, at p. 1246.)

"In all of the above examples," the court "found exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws." (*Action Apartment Assn.*, *supra*, 41 Cal.4th at p. 1247; see *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361 ["Section 47(b), of course, does not bar a criminal prosecution that is based on a statement or communication, when the speaker's utterance encompasses the elements of a criminal offense. (See, e.g., Pen. Code, §§ 118 [perjury], 148.5 [false report of criminal offense].)"].) There is, however, no "exception for criminal prosecutions . . . inherent in the litigation privilege itself." (*Action Apartment Assn.*, p. 1246.)

Apart from whether the privilege applies in particular criminal prosecutions, the privilege has been held applicable in derivative civil actions based on allegations that the

11

defendants violated a criminal statute, or committed perjury or fraud, in a prior action. (See, e.g., *Ribas v. Clark* (1985) 38 Cal.3d 355, 358-359, 364-365 [privilege applied in derivative civil action based on attorney's alleged violations of Pen. Code §§ 631, 637, & 637.2 (invasion of privacy) in prior action]; *Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 642-643 [privilege applied in derivative civil action based on defendants' submission of forged and falsified will in prior probate proceeding]; *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1141-1142 [privilege protected the defendant's malicious or fraudulent communications in prior probate proceeding in derivative civil action for damages]; and *Doctors' Co. Ins. Servs. v. Superior Court* (1990) 225 Cal.App.3d 1284, 1300 [privilege applied in derivative civil action based on the defendant's alleged subordination of perjury in prior action].)

In other derivative civil actions, courts have held that the privilege *does not apply* if the action is based on a statute that is more specific in its operation than the privilege, on the ground that the more specific statute would be rendered wholly or substantially inoperable if the privilege applied. (See, e.g., *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 337-340 [privilege did not apply in civil action for damages for violations of Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act) (Civ. Code, § 1788 et seq.)]; *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1275-1276 [privilege did not apply in People's UCL for violations of the Rosenthal Act and federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (*Persolve*)]; *Banuelos v. LA Investment, LLC* (2013) 219 Cal.App.4th 323, 328-335 [privilege did not apply to claim for retaliatory eviction under Civ. Code, § 1942.5]; and *People ex rel.*

12

*Alzayat v. Hebb* (2017) 18 Cal.App.5th 801, 807-808, 827-828 [privilege did not apply in People's qui tam action against plaintiff's employer for violating the Insurance Frauds Prevention Act (Ins. Code, § 1871 et seq.)].)

In contrast, courts have found that the privilege *does apply* in UCL actions that do not involve statutory violations more specific than the privilege. (See, e.g., *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193-1204 (*Rubin*) [privilege barred UCL action against attorney and capper for wrongful solicitation of litigation against plaintiff in prior action]; *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 955-956, 958-959 (*Gallegos)* [privilege barred People's UCL action for intentional misrepresentations and concealment of material facts in administrative proceedings under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)].)

C. *The Litigation Privilege Applies to the People's UCL Claim*

The People argue that their UCL claim—their first cause of action alleging that defendants engaged in unfair competition (Bus. & Prof. Code, § 17200), by filing and pursuing the false and fraudulent ADA actions—falls outside the scope of the litigation privilege.[6] They argue that their UCL claim is predicated on three criminal statutes, each more specific than the privilege: Penal Code sections 484 (grand theft) and 523

---

[6] The People do not claim that their second cause of action against defendants for violating Business and Professions Code section 17500 (FAL claim) in connection with the ADA lawsuits is exempt from the litigation privilege. Instead, the People confine their discussion to their UCL claim. Accordingly, we consider the People's FAL claim forfeited or abandoned. (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136.)

13

(extortion through writing), and Business and Professions Code section 6128, subdivision (a) (attorney deceit or collusion with intent to mislead court or any party is a misdemeanor). They further argue that the applications of these three predicate statutes would be "significantly undermined" if the privilege barred their UCL claim. We conclude that the privilege bars the People's UCL claim.

We begin by noting that "[t]he UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent. (Bus. & Prof. Code, § 17200.)" (*Rose v. Bank of America*, *N.A.* (2013) 57 Cal.4th 390, 394.) "By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable.' " (*Cel-Tech Communications*, *Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) "[B]y borrowing requirements from other statutes, the UCL does not serve as a mere enforcement mechanism [of the other statutes]. [Rather, the UCL] provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.' " (*Rose v. Bank of America*, *N.A.*, at p. 397.)

In their UCL claim, the People allege that defendants engaged in all three types of unfair competition. They claim defendants committed an unfair, unlawful, *and* fraudulent business practice—by violating Penal Code sections 484 and 523, and section 6128 of Business and Professions Code—in filing and pursuing the ADA lawsuits. That is, they claim that defendants committed the crimes of theft and extortion

14

by writing, and that the attorney defendants also committed or consented to commit fraud or deceit, with the intent to mislead the court or the defendants in the ADA lawsuits.[7]

By their UCL claim, the People are *not* enforcing the three predicate criminal statutes that provide the basis of their UCL claim. (*Rose v. Bank of America*, *N.A.*, *supra*, 57 Cal.4th at p. 397.) Rather, they are pursuing a civil enforcement action for injunctive relief, civil penalties, and restitution, based on defendants' unfair, unlawful, and fraudulent business practice of violating the three predicate criminal statutes in filing and pursuing the ADA lawsuits. The People do not dispute, and it is clear, that all of the factual allegations underlying their UCL claim fall within the "usual formulation" of the litigation privilege. (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.) Instead, they argue their UCL claim is excepted from the privilege because the predicate statutes underlying it are more specific than the privilege, and the operation of these statues would be substantially undermined if the privilege applied to their UCL claim.

When the "borrowed" statute underlying a UCL claim is more specific than the privilege, the conduct "specifically prohibited" by the borrowed statute is excepted from the privilege. (*Persolve*, *supra*, 218 Cal.App.4th at p. 1276.) But here, the crimes of theft (Pen. Code, § 484) and extortion by writing (Pen. Code, § 523) are not more specific

---

[7] Penal Code section 484 defines the crime of theft as including the taking of personal property of another "by any false or fraudulent representation or pretense." Penal Code section 523 criminalizes, as a form of extortion (Pen. Code, § 519), sending a letter or a writing to a person threatening to expose or impute to the person a "deformity, disgrace, or crime." (Pen. Code, § 519.) Section 6128 of the Business and Professions Code, subdivision (a), provides in relevant part that, "Every attorney is guilty of a misdemeanor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

than the privilege because they can be committed in many contexts, not only in a judicial proceeding or to achieve the objects of the litigation. (See *Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.) Nor, as we later explain, would the operation of these statutes be substantially undermined by the application of the privilege to the People's UCL claim. (Cf. *Persolve*, *supra*, at p. 1275 [The Rosenthal Act and the federal Fair Debt Collection Practices Act would be rendered "significantly inoperable" and "negated" if they "did not prevail over the privilege where the two conflict."].)

Although our Supreme Court has noted that the litigation privilege does not apply to a *criminal prosecution* for violation of Business and Professions Code section 6128 (*Action Apartment Assn.*, *supra*, 41 Cal.4th at p. 1246), the People are not criminally prosecuting defendants for violating this statute. Rather, the People's UCL claim amounts to a derivative civil action against defendants based on fraudulent communications that defendants made in, or in furtherance of, the filing and pursuit of their ADA lawsuits. (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.) The People's UCL claim is precisely the type of derivative civil action that the privilege was intended to preclude. (See *id*. at pp. 216-218; *Rubin*, *supra*, 4 Cal.4th at pp. 1193-1204.)

*Rubin* is instructive. There, a co-owner of a mobilehome park, Rubin, sued one of the park's residents, Green, and Green's attorneys, for various torts including interfering in the park owners' contractual relations with park residents, and for committing an unfair business practice (Bus. & Prof. Code, § 17200) by unlawfully soliciting the park's residents to sue the park's owners in a prior lawsuit, in violation of Business and Professions Code sections 6152 and 6153. (*Rubin*, *supra*, 4 Cal.4th at p. 1191-1192,

16

1196-1197, 1200.) The *Rubin* court held that the litigation privilege barred Rubin's tort and UCL claims. (*Id*. at pp. 1196-1197.) It reasoned that the privilege protected the defendants' factual misrepresentations to the park residents, together with their other communications made during, and in furtherance of, their filing of the prior lawsuit, even if their conduct amounted to unlawful attorney solicitation. (*Id*. at p. 1196.)

In rejecting Rubin's argument that the privilege did not bar his UCL claim, the *Rubin* court noted that our Courts of Appeal had, in various cases, "rejected the claim that a plaintiff may, in effect, 'plead around' absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute." (*Rubin*, *supra*, 4 Cal.4th at p. 1201.) The court further reasoned that, because the defendants' conduct was "clearly communicative and otherwise within the scope" of the privilege, permitting "the same communicative acts to be the subject of an injunctive relief proceeding" under the UCL would "upset the carefully constructed balance between 'the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation . . . .' " (*Id*. at pp. 1202-1203.)

The *Rubin* court's reasoning applies to the People's UCL claim. Even if defendants committed theft, extortion, and deceit or fraud (Pen. Code, §§ 484, 523; Bus. & Prof. Code, § 6128) in filing and pursuing the ADA lawsuits, permitting the People's UCL claim would undermine the purposes of the privilege. (*Rubin*, *supra*, 4 Cal.4th at pp. 1193-1204; *Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.) Additionally, the availability of criminal, civil, and State Bar sanctions for fraudulent conduct in judicial proceedings supports taking an "expansive view of the privilege in

17

civil actions," including in this action. (*Hagberg v. California Federal Bank*, *supra*, 32 Cal.4th at pp. 371-372; *Rubin*, at pp. 1198-1199, 1203-1204; *Silberg v. Anderson*, at pp. 218-219 ["[I]n a good many cases of injurious communications, other remedies aside from a derivative suit . . . will exist and may help deter injurious [communications] during litigation. Examples of these remedies include criminal prosecution for perjury . . . or subordination of perjury . . . ."].)[8]

---

[8] At oral argument, the People asked this court to, at minimum, allow their UCL claim to proceed against the attorney defendants based on the attorney's alleged misdemeanor violations of section 6128, subdivision (a), of the Business and Professions Code in filing and pursuing the ADA lawsuits. As they did in their briefing, the People maintain that Business and Professions Code section 6128 is more specific than the litigation privilege. We agree. As our Supreme Court has observed, "The *misdemeanors* established by Business and Professions Code section 6128 evince a legislative intent that certain attorney conduct not be protected *from prosecution* by the litigation privilege." (*Action Apartment Assn.*, *supra*, 41 Cal.4th at p. 1246, added italics.) But as we have noted, the People, by their UCL claim, are not prosecuting the attorney defendants for any misdemeanor violations of Business and Professions Code section 6128. Rather, the People are seeking to hold all of the defendants civilly liable under the UCL based on their alleged fraud and deceit in filing and pursuing the ADA lawsuits.

This is a critical distinction. As we have noted, courts have held that the litigation privilege does not apply to a UCL claim that is based on a "borrowed" statute that is more specific than the privilege, but only if the more specific statute would be rendered wholly or substantially inoperable if the privilege applied. (See, e.g., *Persolve*, *supra*, 218 Cal.App.4th at p. 1276 ["Where, as here, the 'borrowed' statute is more specific than the litigation privilege *and the two are irreconcilable*, unfair competition law claims based on conduct specifically prohibited by the borrowed statute are excepted from the litigation privilege." (Italics added.)].) The privilege and Business and Professions Code section 6128 are not irreconcilable. That is, the latter statute will not be rendered wholly or substantially inoperable by applying the privilege to the People's UCL claim, to the extent the UCL claim is based on the attorney defendants' alleged violations of the statute. Indeed, People may criminally prosecute the attorney defendants for their alleged misdemeanor violations of Business and Professions Code section 6128 in filing and pursuing the ADA lawsuits. The attorney defendants are also subject to State Bar disciplinary proceedings for the same alleged misdemeanor violations. Further, allowing the People's *derivative* UCL action to proceed against the attorney defendants based on

*[footnote continued on next page]*

18

The People argue that, "if affirmed, the trial court's order will immunize respondents' criminal fraud scheme and frustrate the People's enforcement of criminal laws designed to protect against attorney deceit, extortion, and theft." We respectfully disagree. As noted, defendants' alleged misconduct is not immunized by application of the litigation privilege to this lawsuit. There remains the availability of criminal charges[9] and other remedies for defendants' alleged fraudulent conduct that would not conflict with the privilege, including State Bar sanctions and civil sanctions in the ADA lawsuits themselves. As courts have also recognized, the unavailability of derivative civil liability, in a subsequent civil suit, for fraudulent conduct in litigation is " ' "the necessarily harsh result in extending a privilege to false and fraudulent statements made in the course of a judicial proceeding. We accept that result, however, on account of the overriding importance of the competing public policy in favor of enhancing the finality of judgments and avoiding unending postjudgment derivative litigation—a policy which places the obligation on parties to ferret out the truth while they have the opportunity to do so *during* litigation." ' " (*Herterich v. Peltner*, *supra*, 20 Cal.App.5th at p. 1142.) The "privilege extends to fraudulent statements, even when made to a court, if they were made in furtherance of litigation." (*Id*. at p. 1141; *Flatley v Mauro* (2006)

---

their alleged violations of the statute in the ADA lawsuits would undermine one of the principal purposes of the privilege: promoting the effectiveness of judicial proceedings by encouraging attorneys to "zealously protect their clients' interests" without fear of subsequent derivative actions. (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 214.)

[9] We note the People are not pursuing criminal charges against defendants by this action.

39 Cal.4th 299, 322 ["The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' "].)

We also reject the People's claim that privilege should not apply here because their UCL claim is based on statutory predicate offenses. The People maintain that UCL claims based on statutory predicate offenses, like theirs, "do not offend the primary purpose of the litigation privilege" because they are " 'equitable in nature; damages cannot be recovered.' " But *all* UCL actions are equitable in nature; the remedies are limited to injunctive relief and restitution. (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1133.) Additionally, *all derivative* UCL actions—those based on communications made in, or in furtherance of, a prior judicial proceeding—undermine free and open access to the courts and the finality of judgments, unless the action is based on a statute that is more specific than the privilege, and the statute would be vitiated or significantly undermined if the privilege applied. (See, e.g., *Persolve*, *supra*, 218 Cal.App.4th at p. 1275.)

D. *The Privilege Applies to the People's UCL Claim, Even Though the People Were Not a Party to the ADA Lawsuits and Are Suing Defendants on Behalf of the Public*

Lastly, the People claim the litigation privilege "must yield" to their UCL claim because they were not a party to the ADA lawsuits, and they are not a private litigant but are representing the public in their UCL claim. They argue, "if criminal conduct is tailored to coincide with a judicial proceeding," and if prosecutors are barred from pursuing UCL actions to enjoin such conduct, then "not only have [the underlying criminal] statutes been rendered significantly inoperable, but the purpose of the [UCL]

20

will also have been thwarted." They stress that the UCL is broad and was intended " 'to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.' " (*People v. McKale* (1979) 25 Cal.3d 626, 632.) In effect, the People ask this court to create an exception to the privilege where a UCL action, based on criminal predicate statutes, is brought by a law enforcement agency that was not a party to the prior action in which the underlying privileged communications were made. Following our Supreme Court in *Action Apartment Assn.*, and the Court of Appeal in *Gallegos*, we decline to do so.

In *Action Apartment Assn.*, the plaintiffs, a group of landlords, sued the City of Santa Monica, claiming that the litigation privilege preempted the City's "Tenant Harassment" ordinance. (*Action Apartment Assn.*, *supra*, 41 Cal.4th at pp. 1237, 1239.) Among other things, the ordinance authorized the City to seek civil and criminal penalties against a landlord for *suing a tenant* to recover possession of a rental unit when the landlord lacked a reasonable factual or legal basis for the suit. (*Id.* at p. 1237.) The court in *Action Apartment Assn.* agreed with the plaintiffs that the privilege preempted this part of the ordinance: "Whether actions pursuant to this provision of [the ordinance] are brought by the City, a third party, or a tenant, such actions alleging that a landlord had improperly filed an action to recover possession of rental housing would severely restrict landlords' freedom of access to the courts." (*Id.* at p. 1243.)

The *Action Apartment Assn.* court squarely rejected the City's suggestion that any claims brought by parties not involved in the underlying litigation, including claims brought by government entities, are not barred by the privilege. (*Action Apartment Assn.*,

21

*supra*, 41 Cal.4th at p. 1247.)  The court acknowledged that, in *Rubin*, it "*stated in dictum* 'that the policy underlying the unfair competition statute can be vindicated by multiple parties other than plaintiff,' including the Attorney General, district attorneys, certain city attorneys, and 'members of the public who, unlike plaintiff, are not adversaries in collateral litigation involving the same attorneys.' " (*Ibid*., citing *Rubin*, *supra*, 4 Cal.4th at p. 1204, italics added.)  But the court expressly "decline[d] to recognize a broad exception to the litigation privilege for any party who did not participate in the underlying litigation," because "[a]n exception to the litigation privilege for all suits brought by parties who were not involved in the underlying litigation would be antithetical to the privilege's purposes. . . .  Derivative litigation brought by parties who did not participate in the underlying litigation, like litigation brought by parties who did participate, would pose an external threat of liability that would deter potential litigants, witnesses, and others from participating in judicial proceedings." (*Id*. at pp. 1247-1248.)

The Court of Appeal reached the same conclusion in *Gallegos.*  There, the People brought a UCL action against Pacific Lumber Co. for its alleged fraudulent representations and concealments of facts in prior administrative proceedings under CEQA. (*Gallegos*, *supra*, 158 Cal.App.4th at pp. 954-956.)  The company's fraud allegedly resulted in it obtaining administrative approval for an increased rate of timber harvesting, as well as decreased environmental mitigation requirements on the company's timberlands. (*Id*. at pp. 954-955.)  The People sought civil penalties and other relief under the UCL to prevent the company "from realizing profits on timber harvested pursuant to [the company's] allegedly fraudulently obtained" plans and approvals. (*Id*. at

22

p. 956.)  The *Gallegos* court affirmed the order sustaining the company's general demurrer to the UCL complaint on the ground that the litigation privilege applied.  (*Id*. at pp. 954, 959.)

Following *Action Apartment Assn.*, the *Gallegos* court rejected the People's claim that the privilege did not apply to their UCL complaint because they (1) were not a party to the underlying CEQA proceedings, and (2) are a government entity, suing on behalf of the public rather than a private litigant.  (*Gallegos*, *supra*, 158 Cal.App.4th at pp. 960-961.)  For the same reasons, we reject the People's argument that the privilege does not apply to their UCL claim, and that their UCL claim is not truly a derivative suit because they were not a party to the ADA lawsuits and are suing defendants on behalf of the public.  As we have explained, the People's UCL claim is precisely the type of derivative civil action that the privilege was intended to preclude.  (*Action Apartment Assn.*, *supra*, 41 Cal.4th at pp. 1247-1248.)

Lastly, in *Action Apartment Assn.,* our Supreme Court acknowledged that the Legislature could create exceptions to the litigation privilege for parties and nonparties to prior judicial proceedings.  (*Action Apartment Assn.*, *supra*, 41 Cal.4th at p. 1247.)  The People's supporting amicus curiae claims that the *voters* created an exception to the litigation privilege *for public prosecutors* in UCL actions when, in 2004, the voters approved Proposition 64 (Gen. Elec. (Nov. 2, 2004)).  We disagree.

Proposition 64 revised the UCL's standing requirements to provide that *private plaintiffs* can no longer bring UCL claims on behalf of themselves or the public, unless they "suffered injury in fact and . . . lost money or property as a result of  . . . unfair

23

competition." (Bus. & Prof. Code, § 17204, as amended by voters, Prop. 64, § 3, eff. Nov. 3, 2004.) But we discern no intent and purpose in the voters' enactment of Proposition 64 to exempt UCL actions, brought by public prosecutors, from the litigation privilege.

As our Supreme Court has explained, " '[i]n 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" (former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198), now private standing is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3; see *Californians for Disability Rights v. Mervyn's*, *LLC* [(2006)] 39 Cal.4th [223,] 227-228 . . . ). The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of " 'clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant . . . .' " (*Californians for Disability Rights*, at p. 228, quoting Prop. 64, § 1, subd. (b)(3).)' " (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-321.)

Amicus curiae argues that the "intent and purpose" of Proposition 64 was *actually* to "clarify and strengthen the unique role of public prosecutors in enforcing the UCL to protect the public from 'shakedown' lawsuits" like defendants' ADA lawsuits. But Proposition 64 did not change the standing requirements for public prosecutors to bring

24

UCL claims. Nor did it in any way concern the litigation privilege or amend Civil Code section 47, subdivision (b).

Amicus curiae points to nothing in the provisions of Proposition 64, or in its ballot summary or arguments, to support its claim. (See *B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 753 [in determining intent of voter initiative, a court looks to the provisions of the initiative and may also look to the ballot materials in support of its passage].) We discern no voter intent and purpose, either in the language of Proposition 64 or in its ballot summary and arguments, to repeal or limit the litigation privilege of Civil Code section 47, subdivision (b), when a public prosecutor brings a derivative UCL claim against a defendant based on communications that the defendant made in or in furtherance of a prior judicial proceeding.[10] For the reasons explained, the litigation privilege applies to the People's UCL claim.

---

[10] We note the Legislature is quite capable of expressing its intent to exempt public prosecutors from the application of a law where it desires to do so. For example, Code of Civil Procedure section 425.16, subdivision (d), exempts public prosecutors from anti-SLAPP lawsuits. It provides as follows: "This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor."

## IV.  DISPOSITION

The judgment of dismissal is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

I concur:


McKINSTER
Acting P. J.

RAPHAEL, J., Concurring.

I respectfully concur separately because I think we cannot reject this lawsuit because it is based on communications protected by the litigation privilege, as we do, without holding more broadly that an unfair competition law (UCL) lawsuit cannot be maintained in the face of a litigation privilege bar. It does not work to try to distinguish *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267 (*Persolve*), which allowed a UCL lawsuit founded on privileged communications. We must either follow *Persolve* or disagree with it.

The reason for the exception to the Civil Code, section 47, subdivision (b) (section 47(b)) litigation privilege for statutes more specific than the privilege is that we presume that the legislature would not have enacted a statute where the privilege would preclude nearly all its uses. But the UCL is wide ranging, creating a civil cause of action for conduct that is unfair, unlawful, or fraudulent. "The UCL . . . is not necessarily 'more specific than the litigation privilege and would [not] be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege.'" (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 962.) Consequently, we cannot infer that the legislature meant for the UCL itself to trump the privilege, so it does not fall into the exception.

*Persolve*, however, held that we are to examine whether the statute "borrowed" by the UCL in a case is more specific than the litigation privilege, and, if so, the UCL lawsuit can go forward just as a case based directly on that borrowed statute could.

(*Persolve*, *supra*, 218 Cal.App.4th at p. 1276.) One of the borrowed statutes in this case is Business and Professions Code section 6128 (section 6128), which criminalizes certain types of attorney deceit. As section 6128 is more specific than the privilege, it "evince[s] a legislative intent" that prosecution of the conduct is not barred by the privilege. (*Action Apartment Assn, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1246.) Under a straightforward application of *Persolve*, this UCL lawsuit would *not* be barred to the extent it relies on ("borrows") section 6128.

By holding this lawsuit *is* barred without rejecting *Persolve*, today's opinion suggests that, among statutes that are more specific than the privilege, some can serve as a predicate for a UCL lawsuit but some cannot. I do not see basis for distinguishing in this way among the statutes that are more specific than the privilege.

The principal reason today's opinion offers for distinguishing *Persolve* is that section 6128 can be enforced in ways other than through the UCL, including criminal prosecutions and state bar proceedings. (Maj. opn., *ante*, at p. 18, fn. 8.) This reason cannot distinguish *Persolve* because it would mean that *Persolve* itself was wrongly decided: the state and federal debt collection statutes "borrowed" in *Persolve* also can be enforced without the UCL. Those statutes can be enforced through an individual debtor's private right of action (Civ. Code § 1788.30), through a class action (see *Timlick v. National Enterprise Systems, Inc.* (2019) 35 Cal.App.5th 674, 689), or by Federal Trade Commission enforcement actions (15 U.S.C. § 1692l). A few debt collection violations can even be enforced through misdemeanor prosecutions (see Civ. Code § 1788.16).

2

If *Persolve* is correct to require us to focus on whether the borrowed statute is more specific than the privilege, I think we would be compelled to let this lawsuit proceed to the extent it borrows section 6128, which is more specific than the privilege.

But I am not persuaded that *Persolve* correctly treats the UCL as an empty vessel for the "borrowed" statute. Rather, it seems that we should focus on the UCL itself, which is not narrower than the privilege and thus not an exception to it.

First, in other contexts, our Supreme Court has emphasized that the UCL is not "a mere enforcement mechanism" but a substantive statute that "provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" (*Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 397; see also *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 566 [superseded by statute on other grounds] ["SYA seeks relief from alleged unfair competition, not to enforce the Penal Code."]) This counsels for a focus on whether the UCL itself is broader than the privilege, not on whether the borrowed statute is. In practical terms as well, the UCL is not merely a redundant way to enforce a borrowed statute, because it allows civil plaintiffs (including class action plaintiffs) to bring lawsuits to enforce criminal statutes.

Secondly, the UCL is not necessary to give meaning to the statutes it borrows, at least when they can be enforced directly. To harmonize section 6128 with the section 47(b) privilege, the former has been construed to be an exception to the latter when a district attorney brings a section 6128 prosecution. The Legislature, we infer, would not have intended to enact a crime that could never be enforced due to the privilege. It is not,

3

however, necessary that a UCL action founded on section 6128 be an exception to the statutory privilege, because both section 6128 and the UCL have effect in other ways.

In sum, if we agree with *Persolve* that we are to focus on the borrowed statute in a UCL action, I think we would have to approve of this lawsuit to the extent that it borrows section 6128. It is because I think we instead must focus on the UCL itself that I concur in the disposition, and I agree with the otherwise well reasoned opinion.

RAPHAEL

J.

4