Filed 5/12/21  Valbuena v. Ocwen Loan Servicing CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GARY VALBUENA, | |
| Plaintiff and Appellant, | E073534 |
| v. | (Super.Ct.No. RIC1812204) |
| OCWEN LOAN SERVICING, LLC et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag, Judge.

Affirmed.

Gary Valbuena, in pro. per., for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, and Kerry W. Franich, for Defendant and

Respondent Ocwen Loan Servicing, LLC.

ZBS Law and Bradford E. Klein for Defendants and Respondents Law Offices of

Les Zieve, Christine O'Brien and Geoffrey Neal.

1

Plaintiff and appellant Gary Valbuena (Plaintiff) sued Ocwen Loan Servicing, LLC (Ocwen); Homeward Residential, Inc. (Homeward); the Federal Home Loan Mortgage Corporation (Freddie Mac); JPMorgan Chase Bank, NA (Chase); Karen Smith (Smith); Vicki Pospisil (Pospisil); the Law Offices of Les Zieve; Christine O'Brien; and Geoffrey Neal for alleged issues related to a home foreclosure.  The defendants demurred.  The trial court sustained the demurrer without leave to amend.  Plaintiff contends the trial court erred by sustaining the demurrer.  We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY[1]

In 2002, Plaintiff's mother (Mother) and father (Father) purchased property in Banning (the property).  Mother and Father obtained a loan secured by a deed of trust on the property.  Father died in January 2005.  In June 2005, Mother transferred the property from herself to her trust (the Trust).  In 2006, Mother refinanced the property through Washington Mutual and transferred the property back to herself as an individual.

Thereafter, in September 2006, the promissory note for the property was transferred into a securitized pool of loans.  In 2008, Washington Mutual declared bankruptcy, and Chase purchased Washington Mutual's assets.  When Chase purchased

---

[1] Because this an appeal following the sustaining of a demurrer, we present the version of the facts alleged by plaintiff along with matters that were judicially noticed by the trial court.  (See generally *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 438-439 ["We do not . . . assume the truth of 'mere contentions or assertions contradicted by judicially noticeable facts' "].)

2

Washington Mutual's assets, Chase did not "buy any individual Originated Mortgage Loan by [Washington Mutual] prior to September 25, 2008," which includes the loan for the property. Nevertheless, Chase became trustee of the deed of trust for Mother's loan.

In February and March 2012, Mother failed to make her loan payments. A notice of default in the amount of $9,867.90 was recorded in June 2012. The notice of default informed Mother that she should direct any payments to "JPMorgan Chase Bank, National Association successor in interest by purchase from the FDIC as Receiver of Washington Mutual Bank f/k/a Washington Mutual Bank, FA C/O Northwest Trustee Services, Inc." On November 8, 2012, Chase assigned its beneficial interest in the deed of trust to Homeward.

On November 14, 2012, Mother modified the loan with Homeward. In the modification agreement, Homeward was identified as the lender. The new principal balance of the promissory note was $303,761.83. The maturity date for the loan was November 1, 2052. Mother agreed to an interest rate of two percent for the first five years of the loan; three percent for the sixth year of the loan; and 3.375 percent for the remaining 34 years of the loan. The payment schedule would not result in the loan being paid in full by November 2052, so Mother would have to make a balloon payment at the end of the loan period. On April 2, 2014, Mother executed a grant deed transferring the property from her ownership as an individual into the Trust. Mother died in August 2014.

3

After Mother died, plaintiff (from what we gather in the allegations) made the monthly payments on Mother's loan. However, in September, October, and November 2015, plaintiff failed to make the loan payments. In November 2015, Homeward assigned its beneficial interest in the deed of trust to Ocwen. In November 2015, Ocwen substituted the Law Offices of Les Zieve as trustee for the deed of trust. In November 2015, plaintiff contacted Ocwen. Plaintiff offered to bring the mortgage payments current in December because he was expecting to receive money in December. Ocwen informed plaintiff that any payment would have to bring the loan current—no partial payments would be accepted. On December 9, 2015, a notice of default in the amount of $10,124.46 was recorded.

In January 2016, Ocwen assigned its beneficial interest in the deed of trust to Freddie Mac. A notice of trustee's sale was recorded on March 16, 2016. The sale was scheduled for April 20, 2016. On April 18, 2016, Mother's 2014 grant deed from herself to the Trust was recorded. That same day, plaintiff filed a lawsuit seeking to prevent the foreclosure. The defendants in that lawsuit filed separate demurrers. Between November 2016 and February 2017, at separate hearings, the trial court sustained the defendants' demurrers without leave to amend. This court affirmed the trial court. (*Valbuena v. Law Offices of Les Zieve* (Sept. 13, 2018, E067927 [nonpub. opn.]) [2018 LEXIS 6273].)

In March 2017, plaintiff as trustee of the Trust executed a quit claim deed granting the property to the Trust and plaintiff as joint tenants. On September 12, 2017, the Law Offices of Les Zieve recorded a new notice of trustee's sale. On October 26,

4

2017, the trustee's deed upon sale was recorded. In the deed upon sale, the Law Offices of Les Zieve was listed as the trustee; Mother was listed as the trustor; and Freddie Mac was listed as the beneficiary and grantee.

Plaintiff filed the instant lawsuit on June 15, 2018. At that time, plaintiff was being threatened with eviction. The instant lawsuit is based upon plaintiff's "new discovery" that the promissory note and deed of trust were not part of Chase's purchase of Washington Mutual's assets, which means Chase could not transfer the deed of trust to Homeward, which means the parties who foreclosed on the property did not have the authority to foreclose. Plaintiff included eight causes of action in his first amended complaint (FAC).

On June 19, 2018, plaintiff filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Central District of California. On September 25, 2018, the Bankruptcy Court granted Freddie Mac's motion for relief from the stay of an unlawful detainer case against plaintiff (11 U.S.C.A. § 362(a)), which permitted Freddie Mac to "enforce its remedies to obtain possession of the Property, including lockout."

In the instant case, Ocwen, Homeward, Freddie Mac, Smith, and Pospisil demurred to the FAC. The remaining defendants—Chase, the Law Offices of Les Zieve, Christine O'Brien, and Geoffrey Neal—joined in the demurrer. One of defendants' arguments was that "[b]ecause [Mother] benefitted from Homeward's loan modification agreement, [Mother] and her successors like Plaintiff are estopped from challenging Homeward's authority to enforce the Loan." Plaintiff opposed the demurrer. Plaintiff asserted he had standing to sue defendants because he is the owner

5

of the property.  The trial court sustained the demurrer without leave to amend and dismissed the case in its entirety.

## DISCUSSION

### A.    STANDARD OF REVIEW

"When a demurrer is sustained by the trial court, we review the complaint de novo to determine whether, as a matter of law, the complaint states facts sufficient to constitute a cause of action.  [Citation.]  Reading the complaint as a whole and giving it a reasonable interpretation, we treat all material facts properly pleaded as true.  [Citation.]  The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.  [Citation.]  We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings."  (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

### B.    STANDING

Plaintiff's first cause of action alleged Ocwen and Law Offices of Les Zieve violated the Homeowners' Bill of Rights (Civ. Code, § 2920.5 et seq.), specifically Civil Code section 2924.17, by recording void documents pertaining to the property.  On appeal, plaintiff contends the trial court erred by concluding plaintiff lacked standing to allege a violation of the Homeowners' Bill of Rights.

6

"Standing is the threshold element required to state a cause of action and, thus, lack of standing may be raised by demurrer." (*Martin v. Bridgeport Community Assn., Inc.*, *supra*, 173 Cal.App.4th at p. 1031.) Civil Code section 2924.17, subdivision (a), provides that foreclosure documents, such as notices of default and notices of sale, must "be accurate and complete and supported by competent and reliable evidence." In his FAC, plaintiff cites Civil Code section 2924.12, which provides a borrower has standing to sue for a violation of Civil Code section 2924.17. (Civ. Code, § 2924.12, subd. (a).) A " 'borrower' means any natural person who is a mortgagor or trustor." (Civ. Code, § 2920.5, subd. (c)(1).)

In the FAC, plaintiff alleged that Mother and Father obtained a loan for the property in 2002, Mother refinanced the property in 2006, and Mother modified the loan in 2012. Plaintiff does not allege that he obtained a loan for the property. The 2016 notice of trustee's sale lists Mother as the trustor. The 2017 trustee's deed upon sale lists Mother as the trustor. It appears from plaintiff's allegations that plaintiff continued to pay Mother's loan after Mother died. Thus, Mother is the borrower not plaintiff.

In the FAC, plaintiff alleges that he is Mother's successor-in-interest for the loan. To support his assertion, plaintiff cites to "section (Q)" of the deed of trust for Mother's 2006 loan with Washington Mutual. Section Q is in the "definition" section of the deed of trust. It provides that " 'Successor in Interest of Borrower' means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument."

7

Thus, a successor in interest under the deed of trust need not have "assumed Borrower's obligations under the Note," but to meet the statutory definition of "borrower," one must be a mortgagor or trustor. (Civ. Code, § 2920.5, subd. (c)(1).) Plaintiff failed to allege how the definition of "successor in interest of borrower" within the deed of trust would expand the statutory definition of "borrower." If one is not a mortgagor or trustor, then one is not a borrower under the statute. (Civ. Code, § 2920.5, subd. (c)(1).) If one is not a borrower under the statute, then one does not have standing.

A different section of the deed of trust addresses any transfer in ownership of the property. It provides, "If all or any part of the Property or any Interest in the Property is sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument." Plaintiff fails to allege that Mother contacted the lender prior to transferring the property into the Trust and/or that he contacted the lender prior to transferring the property in joint tenancy to himself. As a result, plaintiff does not provide sufficient allegations to support his conclusion that he is a "borrower" as defined in Civil Code section 2920.5, subdivision (c)(1). Because plaintiff is not a borrower, plaintiff lacks standing to sue for an alleged violation of Civil Code section 2924.17. Therefore, the trial court properly sustained the demurrer to the first cause of action.

8

Plaintiff asserts that he "is being denied the opportunity to exercise his rights under [the Homeowners' Bill of Rights] because the named borrower has died. . . . The California [L]egislature could not have intended such a result." If the Legislature wanted people other than trustors and mortgagors to have standing, then it would have included other people. Because the Legislature did not include people other than trustors and mortgagors (Civ. Code, § 2920.5, subd. (c)(1)), we are not persuaded that the Legislature intended for others to be included. (*People v. Whitmer* (2014) 230 Cal.App.4th 906, 917 [" ' "the expression of certain things in a statute necessarily involves exclusion of other things not expressed" ' "].)

Plaintiff contends that "[p]ublic policy requires that [plaintiff] has standing to sue under [the Homeowners' Bill of Rights] because there is no one else to do so." Plaintiff's position appears to be that he avoided personal liability for the loan by not contacting the lender prior to putting the property into his name and now should be able to sue pursuant to public policy. We find plaintiff's contention to be unpersuasive.

C.      CAUSES OF ACTION ONE THROUGH FIVE AND SEVEN

Plaintiff contends the trial court erred by finding he did not plead sufficient facts for causes of action one through five and seven. We have explained *ante* that the first cause of action fails because plaintiff failed to sufficiently allege that he has standing to bring a cause of action for an alleged violation of the Homeowners' Bill of Rights.

Plaintiff's second through fifth causes of action and seventh cause of action pertain to common law wrongful foreclosure. The second cause of action alleges conspiracy to wrongfully foreclose. The third cause of action alleges unfair business

9

practices related to the allegedly wrongful foreclosure.  (Bus. & Prof. Code, § 17200.)  The fourth cause of action is for aiding and abetting the allegedly wrongful foreclosure.  The fifth cause of action is for wrongful foreclosure.  The seventh cause of action seeks to quiet title.

"Wrongful foreclosure is a common law tort claim.  'The elements of a wrongful foreclosure cause of action are:  " '(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.' " ' " (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525.)

We briefly address the different standing requirement under the common law.  In common law, a party " 'with an interest . . . in the real property security itself ha[s] standing to challenge or attempt to set aside a nonjudicial foreclosure sale." ' " (*Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.* (2009) 180 Cal.App.4th 1090, 1103.)  Plaintiff obtained an interest in the property in March 2017, and the trustee's sale took place in October 2017.  Plaintiff had an ownership interest in the property at the time of the foreclosure, so plaintiff has standing to bring the common law wrongful foreclosure claims.

We now turn to the sufficiency of plaintiff's allegations. Plaintiff's theory is that there is not a 2008 assignment of deed of trust from Washington Mutual to Chase because Mother's loan was not part of Chase's purchase of Washington Mutual's assets, so the assignment from Chase to Homeward and all the assignments thereafter lack validity, which means Ocwen and the Law Offices of Les Zieve lacked authority to foreclose on the property in 2017. The flaw in plaintiff's allegations is that plaintiff fails to take into account the intervening event of the 2012 loan modification.

In Mother's 2012 loan modification, Mother agreed that Homeward was her lender. Mother agreed to a new principal balance, new interest rates, and new mortgage maturity date. Mother agreed to work with Homeward. Thus, if there were any error in the 2008 documents, that error was cured by the 2012 loan modification because Mother signed a contract recognizing Homeward as her lender and agreeing to loan terms with Homeward. The 2012 loan modification effectively fixed any issues as to the identity of Mother's lender. Because plaintiff's allegations fail to address the intervening event of the 2012 loan modification, he has not sufficiently pled how an error in the lender's identity in 2008 could have caused a wrongful foreclosure in 2017, which means plaintiff failed to sufficiently allege the trustee caused a fraudulent sale of real property pursuant to a power of sale in a deed of trust.

Another issue plaintiff raises in the FAC is that, at the time of the December 2015 default, he should not have owed more than $5,000, but Ocwen demanded $10,124.46 to reinstate the loan. Plaintiff asserts Ocwen provided "no explanation or break down of what this amount consisted of." Plaintiff does not allege that, if the

11

reinstatement amount had been less than $5,000 then he would have made the payment. For example, plaintiff alleged that he called Ocwen and asked if he could send them a payment in December 2015 when he expected to receive some money. Plaintiff fails to allege that he received the expected money, that he had $5,000 to send to Ocwen, and that he would have sent the $5,000 to Ocwen. Plaintiff also does not sufficiently allege that he was the borrower, such that the lender would have permitted plaintiff to reinstate the loan. Thus, if we accept as true the allegation that the $10,124.46 amount was inaccurate, it is unclear how that inaccuracy caused plaintiff harm.

Another issue plaintiff raises is that, when Chase transferred the deed of trust to Homeward, Homeward did not provide any consideration for the transfer. Plaintiff makes the same complaint regarding the transfer from Homeward to Ocwen. Plaintiff asserts that the lack of consideration means the transfers were invalid. The assignment from Chase to Homeward reads, "FOR VALUE RECEIVED, the undersigned hereby grants . . . ." The assignment from Homeward to Ocwen reads, "For Value Received, Homeward Residential, Inc. hereby grants . . . ." If we assume that plaintiff's allegations are true, i.e., that no consideration was given, plaintiff has failed to provide authority reflecting such a transfer would be invalid. For example, plaintiff has not cited authority indicating that gifts are not allowed.

In sum, we conclude the trial court properly sustained the demurrer to the second through fifth and the seventh causes of action.

D.     SIXTH AND EIGHTH CAUSES OF ACTION

At the end of plaintiff's appellant's opening brief, he asserts the trial court erred by sustaining the demurrer to all eight causes of action. Plaintiff offers no substantive argument as to the sixth and eighth causes of action. Accordingly, the issue is forfeited as to the sixth and eighth causes of action. (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 281-282.)

E.     AMENDMENT

Plaintiff requests this court "give [Plaintiff] another opportunity to correct what this what this [*sic*] court think [*sic*] is lacking as evidenced by all stated above."

"The law on this point is well settled. 'If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended.' " (*Association of Community Organizations for Reform Now v. Department of Industrial Relations* (1995) 41 Cal.App.4th 298, 302.) The plaintiff must also explain how the proposed " ' "amendment will change the legal effect of his pleading." ' " (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 579.)

Plaintiff has not explained how he would amend the FAC to cure the defects. Rather, plaintiff is relying on this court to inform him of the FAC's defects. Because plaintiff has not met his burden of demonstrating how the FAC might be amended, we conclude the trial court did not err by denying plaintiff leave to amend.

13

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.

14